J. M. BROADWAY v. KELLY L. COPE.

(Filed 10 April, 1935.)

**1. Trial D a—**

Upon a motion as of nonsuit the evidence will be taken in the light most favorable to plaintiff.

**2. Libel and Slander A a—Words spoken held actionable per se as tending to injure plaintiff in his trade.**

Plaintiff and defendant were rival butchers or meat dealers. Defendant stated to third persons words which in effect charged that the cow which plaintiff butchered the previous day had been bitten by a mad dog and advised such persons not to buy the meat from plaintiff. There was no contention that the words were true and no claim of privilege. *Held:* The words were actionable *per se* as a matter of law.

**3. Libel and Slander D d—**

Where words spoken by defendant are actionable *per se* malice and compensatory damage are conclusively presumed.

**4. Same: Appeal and Error J e—**

Plaintiff's testimony in this action for slander on the issue of damages *is held* not incompetent as being of speculative damage, or at least the testimony was harmless in view of the fact that other testimony of like import was admitted without objection.

**5. Libel and Slander D d—Charge of court on issue of damage held without error.**

The charge of the court on the issue of damage in this action for slander by words actionable *per se* as a matter of law, that upon an affirmative finding that the plaintiff published the words complained of, the law presumed malice and compensatory damage, and that plaintiff was entitled to recover his actual damage naturally and proximately resulting from the words spoken, and that plaintiff could be awarded punitive damage in the discretion of the jury upon a finding of actual malice *is held* without error.

APPEAL by defendant from *Oglesby, J.,* at December Term, 1934, of DAVIE. No error.

This is an action brought by plaintiff against defendant to recover damages for slander to his business.

The plaintiff testified, in part: "On 18 October, 1932, I bought a heifer from Mr. Bud Foster, in Rowan County, and I butchered her on the 19th day. She was fine and fat and as nice a cow as I ever saw. I do not think she was bitten by a mad dog. I would say she was not. When I purchased her, she was in Rowan County at Bud Foster's home. I inspected her before buying. I butchered the cow on Thursday and, in consequence of some word that had gotten out, I had a conversation with Mr. Cope. . . . He said he heard I had butchered a mad-dog-bitten cow, and I said, 'Kelly, if it had been me and I had heard that, and found out that you were butchering a beef, I would have told you, but you didn't say a word and drove by and didn't turn your head when I was butchering it.' He never made any answer to that, and I said, 'Kelly, me and you worked together for a long time; I worked for you a long time; you have come to my house at 12 o'clock at night when you wanted me to help you, and why did you do that if you thought I was dirty enough to kill a mad-dog-bitten cow?' I said, 'That ain't what you thought, you thought you would put this word out on me and steal my trade.' He said he hated the word had gotten out and he would not do anything to hurt me if he knew it, but he did tell it. He said, 'I told my wife.' "

Charlie Hepler testified, in part: "Q. You know Sheriff Cope, do you? A. Yes, sir. Q. You can state whether or not you heard a conversation by him while talking to Charlie Carter about this cow. A. I heard a small conversation. They were talking and he was talking

about it, said he went over in the country to buy a cow and he was telling Mr. McDaniel about it, and he told him not to buy that cow, it was neighborhood talk that she had been mad-dog bit, and he said he thought he would go down there, and he went, and Mr. Broadway had the cow down there, skinning her, and he didn't buy her; said Mr. McDaniel told him it was neighborhood talk that the cow had been mad-dog bit. That is all I know about it. Q. Now, where was he? A. He was in his market at North Cooleemee. Q. Who was he talking to? A. A whole crowd in there; Mr. Carter was in there and I was in there, and I didn't pay attention to who all was in there. Q. That in his meat market in Cooleemee? A. North Cooleemee. Q. That was how long after this cow had been butchered by Broadway? A. I don't know exactly how long it was afterwards; that was about the same time. Second or third day, I think, afterwards."

Hill Myers testified, in part: "Q. Well now, at that time, or shortly thereafter, did you hear Mr. Cope—were you at Mr. Kelly Cope's meat market? A. Yes, sir. · Q. When was it with reference to the time the cow was butchered? A. Next day. Q. Now, state what, if anything, you heard Mr. Cope say? A. Mr. Cope asked me had I heard about Mr. Broadway killing a mad-dog-bitten cow, and I said no, and he says, 'He has'; says, 'I thought I would tell you not to buy any meat, as a friend; the cow has been mad-dog bit.' Q. Who else was in there? A. I don't remember now; his wife was in there, for one."

The issues submitted to the jury and their answers thereto were as follows: "(1) Did the defendant, in the presence and hearing of others, charge the plaintiff with having butchered a cow that had been mad-dog bitten, or words of the same substance and meaning, as alleged in the complaint? A. 'Yes.' (2) If so, was said charge made by the defendant maliciously with the design and purpose of injuring the plaintiff in his business? A. ............. (3) What actual damage, if any, is plaintiff entitled to recover? A. '$250.00.' (4) What punitive damage, if any, is plaintiff entitled to recover? A. ........ ....."

The court below rendered judgment on the verdict. Defendant made several exceptions and assignments of error, and appealed to the Supreme Court. The material ones and necessary facts will be considered in the opinion.

*Hayden Clement for plaintiff.*
*A. T. Grant and B. C. Brock for defendant.*

CLARKSON, J. At the close of plaintiff's evidence and at the close of all the evidence the defendant made motions in the court below for judgment as in case of nonsuit. C. S., 567. These motions were over-

ruled by the court below, and in this we can see no error. The evidence must be taken in the light most favorable to the plaintiff. The plaintiff operated a meat market in Cooleemee, under the name of the "Cooleemee Meat Market." Defendant also ran a meat market in North Cooleemee. They were competitive dealers.

Plaintiff testified: "He said he heard I had butchered a mad-dog-bitten cow, and I said, 'Kelly, if it had been me and I had heard that, and found out that you were butchering a beef, I would have told you, but you didn't say a word, and drove by and didn't turn your head when I was butchering it.' . . . He said he hated the word had gotten out and he would not do anything to hurt me, if he knew it, but he did tell it. He said, 'I told my wife.' "

Hill Myers testified: "Q. Now, state what, if anything, you heard Mr. Cope say? A. Mr. Cope asked me had I heard about Mr. Broadway killing a mad-dog-bitten cow, and I said no, and he says, 'He has'; says, 'I thought I would tell you not to buy any meat as a friend; the cow has been mad-dog bit.' "

The plaintiff was a butcher. Is the above language actionable *per se?* We think so. There was no evidence to the effect that plaintiff had butchered a mad-dog-bitten cow.

Webster's International Dictionary defines a "butcher" as follows: "One who slaughters animals, or dresses their flesh for market; also, a dealer in meat."

In *Pentuff v. Park,* 194 N. C., 146 (154), is the following: "An action for libel may always be brought when the words published expose the plaintiff (1) to contempt, hatred, scorn, or ridicule; or (2) are calculated to injure him in his office, profession, calling, or trade." *Ferrell v. Siegle,* 195 N. C., 102. The same principle applies in slander —one is oral and the other is written.

In *Stevenson v. Northington,* 204 N. C., 690 (694), we find: "Undoubtedly, the publication was actionable, if untrue and not privileged, for it tended to expose the plaintiff to ridicule or scorn, and was calculated to injure her in her calling or profession."

There seems to be no dispute as to the publication. The language used was calculated to injure plaintiff in his trade and was actionable *per se.* Malice and compensatory damage are conclusively presumed. Defendant, in his brief, says: "There are other questions discussed in the brief, but the above are the main questions involved in this appeal."

The exceptions and assignments of error in regard to the plaintiff's testimony as to business losses cannot be sustained. They were not so speculative as to be incompetent, at least, the same kind of evidence, unobjected to, appears in the record, which precludes defendant's complaint on this aspect—for example: "Q. What were your profits, if any,

from October, 1932, up until you went out of the meat business? A. Not any. It went down every day."

In the *Stevenson case, supra,* at p. 694, it is said: "Finally it is contended the action should be dismissed because no damage has been shown. The point is without merit. Plaintiff not only proved losses of a financial nature, but she also established injury to her reputation and standing in the community as a result of the publication in question." In the present case, compensatory damage is presumed.

The able and learned judge in the court below, taking the charge as a whole, set forth the law applicable to the facts: "(The court instructs you, gentlemen, that in an action of this character, where justification is not pleaded and privilege is not claimed, the jury, upon finding an affirmative answer to the first issue, implies as a matter of law the charge complained of is false and malicious and compensatory, that is, actual damages may be awarded, and additional punitive damages may also be given if the jury find actual malice.)

"(The court further instructs you, gentlemen of the jury, that in an action of slander for words spoken which are actionable *per se,* compensatory damages may be awarded, which embrace compensation for injuries, if any, which most naturally, proximately, and necessarily are the result of the statement.)

"(The court further instructs you that if the plaintiff has satisfied you by the greater weight or preponderance of the evidence that Cope made the statements, as alleged in the complaint; that is, if you answer the first issue 'Yes,' that the words would be actionable *per se.*)

"The law holds it is a wrong or tort to make statements that have a tendency to injure a person in his profession, calling, or trade. If the plaintiff would be entitled to recover on the third issue under the rules of law given by the court, based upon the facts you find to be true from the evidence, he would be entitled to recover under the rule of law which the court gave you; award no damages based upon speculation, or no damages based upon imagination; but you would be confined to the rule of law which the court gave you; that is, compensatory damages that actually flow, that proximately flow and are necessary results of the words, of the wrong done the plaintiff by the defendant, if you find that he did him a wrong.

"The fourth issue: 'What punitive damages, if any, is the plaintiff entitled to recover?' There is a different rule, gentlemen of the jury, of punitive damages, sometimes called smart money, are allowed in cases where the injury is inflicted in a malicious, wanton, and reckless manner. The defendant's conduct must have been actually malicious or wanton, displaying a spirit of mischief toward the plaintiff, or reckless and criminal indifference to his rights. When these elements

are present, damages commensurate with the injury may be allowed by way of punishment to the defendant. But these damages are awarded on the ground of public policy, for example's sake, and not because plaintiff has a right to the money, but it goes to him merely because it is assessed in his suit. In a proper case, both the awarding of punitive damages and the amount to be allowed, if any, rest in the sound discretion of the jury."

The defendant made exceptions and assignments of error to the above charge set forth in parentheses. They cannot be sustained. We think the charge, under the facts and circumstances of this case, sets forth the law in this jurisdiction. On the whole record, we find no prejudicial or reversible error.

No error.