This is an action to recover damages, both actual and punitive, for the malicious publication by the defendant in the issue of its newspaper, TheGastonia Daily Gazette, of 6 September, 1934, of a news item concerning the plaintiff which, it is alleged in the complaint, is false and libelous.
The plaintiff is now and was prior to 6 September, 1934, a textile operative. He is about 33 years of age and prior to said date had been employed from time to time since he was 16 years of age by manufacturers of textiles in Gaston and other counties in North Carolina. He was and is now dependent upon such employment as a means of earning a living for himself and his wife and children. During the year 1934 he was a resident of Lincoln County, North Carolina, where, prior to 6 September, 1934, he had been employed by a textile manufacturer doing business in said county. Commencing during the spring of 1934 and continuing through the summer and until some time during the fall of 1934, there was a strike by textile operatives in Lincoln County, and in other counties in North Carolina. The plaintiff, as a member of the textile union which had ordered the strike, at its commencement joined in the strike. Neither the plaintiff nor his wife, who is also a textile operative, have been able to secure employment by a manufacturer of textiles doing business in North Carolina since the ending of the strike some time during the fall of 1934.
The defendant is the publisher of the Gastonia Daily Gazette, a newspaper which circulates throughout Gaston County, and other counties in North Carolina. Among its subscribers and readers are officers and employees of textile mills, and others interested in the manufacture of textiles.
In its issue of 6 September, 1934, the defendant published in theGastonia Daily Gazette, a news item as follows:
"SEVENTY-FIVE PICKETS LOCKED UP IN LINCOLNTON.
"Lincolnton, N.C. Sept. 6. — Seventy-five men and women at the Roseland Mill were jailed this afternoon by Sheriff Forney Reinhart on charges of trespassing. They were interfering with the paying off of a group of Loyal Workers, and became incensed when they did not receive any pay. They created a disturbance on the mill grounds and were promptly arrested and thrown into the county jail. Tom Lay, Local Union Leader, was among the ring leaders arrested.
"Other Union Leaders said that the flying squadron at Shelby had been notified, and that they were en route to Lincolnton to free their seventy-five comrades from jail. County officers here were prepared to resist them. The county jail is full, as the Sheriff has been very active." *Page 136 
Thereafter the plaintiff wrote and caused to be delivered to the defendant a letter as follows:
"LINCOLNTON, N.C. December 31, 1934.
"MR. H. A. QUERRY, Editor,Gastonia Daily Gazette, Gastonia, N.C.
"DEAR MR. EDITOR:
The news article printed in the Gastonia Daily Gazette on Thursday, 6 Sept., 1934, on the front page of your paper, stating that `Tom Lay, Local Union Leader, was among the ring leaders,' is false and defamatory and each and every word related in said article hereinafter mentioned concerning me is false and defamatory. The said article in reference more particularly reads as follows:
(Here follows copy of the news item as published by the defendant in the issue of the Gastonia Daily Gazette on 6 September, 1934.)
"I hope to hear from you in the immediate future. I want the correction and a retraction made.
Yours truly,
TOM LAY,
Lincolnton, N.C."
Thereafter, in the issue of its newspaper, the Gastonia Daily Gazette, dated 2 January, 1935, the defendant published the following:
"TOM LAY WAS NOT ARRESTED SEPT. 6.
 "Gazette corrects error relative to arrest of Tom Lay in connection with strike riots.
"On Sept. 6, 1934, the Gazette published a story from its Lincolnton correspondent about the arrest of pickets at the Roseland Mill in Lincoln County. It was stated in the story on the authority of the Lincolnton correspondent that Tom Lay was one of the ring leaders in the strike, and was placed in jail. The Gazette learns from Mr. Lay and from the Sheriff of Lincoln County that he was not arrested. In justice to Mr. Lay, this newspaper corrects the mistaken report. Mr. Lay was not arrested. This correction is made in line with the policy of this newspaper in correcting any mistakes in the publications that may be made and it is glad to make the correction in the interest of truth and accuracy." *Page 137 
All the evidence at the trial showed that the plaintiff was not arrested in Lincolnton on 6 September, 1934; that he was not placed in jail in said county; and that he took no part as leader or otherwise in any disorder that day at the Roseland Mill. The plaintiff was a member of the United Textile Workers and was active in presenting the cause of the union to his fellow operatives and to the public. He made speeches and published articles in the local newspapers in support of the union and its policies.
Evidence offered by the plaintiff showed that he is a man of good character, and was a good worker.
A. F. Reinhart, as a witness for the plaintiff, testified as follows:
"I am sheriff of Lincoln County. I took Tom Lay with me to the Roseland Mill on 6 September, 1934, because I wanted a union man to handle the union people. He told them to do what they did peaceably. I have known Tom Lay all my life. His general reputation is good. He was a union man, not prominent, but stood pretty high with the union people. I looked on him as one of their leaders. I did not arrest him on 6 September, 1934, and did not tell anyone that I had."
W. E. Buff, as a witness for the plaintiff, testified as follows:
"I am chief deputy of Lincoln County. I have known Tom Lay off and on for thirty years. His character is good. He went with me and came back with me from the Roseland Mills on 6 September, 1934. There was no disturbance or violence at the mill that day among the people there. They were simply milling around and talking. Tom Lay went to the jail and talked to the 40-odd prisoners there. He told them that he would have them bonded out by sundown. He talked like one in authority."
Robert A. Wood, as a witness for the plaintiff, testified as follows:
"I am superintendent of the Gray Mill. I know Tom Lay. He worked for me about fifteen years ago. His general character and reputation are very good. He was high strung and arbitrary. Outside of that he was all right. He would scrap a little if necessary. He has not applied to me for work since September, 1934."
There was evidence for the plaintiff tending to show that neither he nor his wife had been able to get work as textile operatives since the publication by the defendant in its newspaper of the news item on 6 September, 1934, although both had applied to officers of numerous cotton mills for work.
Evidence offered by the defendant tended to show that the plaintiff is a man of bad character; that he had made no effort to get work for himself since the end of the strike, and that he had objected to efforts by his wife to get work for herself. *Page 138 
Thomas H. Whitesides, as a witness for the defendant, testified as follows:
"I am superintendent of the Thread Spinners Mill, at Lincolnton. Tom Lay lives in our mill village. He has not applied to me for work since the end of the strike. On one occasion his wife, in his absence, applied for work. He came in while she was applying for work and told her that neither he nor she could work on account of their relation to the union. If I knew that a man who had applied to me for work had been a ring leader in a strike, and had interfered with loyal workers, thus creating a disturbance, I would not employ him unless I was sure that he had reformed. If he had not reformed, I would not employ him."
Mike Whitener, as a witness for the defendant, testified as follows:
"I live in Lincolnton. I am superintendent of the Rudisill Spinning Company, known in this case as the Roseland Mill. I have known Tom Lay for eighteen months or two years. His reputation is bad. He has not applied to me for work. I have employed several men since the strike who were convicted of simple trespass at the mill on 6 September, 1934."
A. B. Claytor, as a witness for the defendant, testified as follows:
"I am the editor of the Lincoln County News. I reported the article in question to the Gastonia Daily Gazette, at Gastonia, N.C. The article was published on 6 September, 1934, substantially as I reported it. There was a considerable crowd standing around the jail in Lincolnton that day. I heard one man say that the officers had Tom Lay. I asked the jailer if Tom Lay had been arrested. He said that he was up there in the jail with the rest of the prisoners. I thanked him and went to my office. I called the Gazette
office at Gastonia by telephone, and reported the story. I never heard any more about it until some time in January, 1935. Tom Lay was well known in Lincolnton as a union leader. He was active in the strike. I am not a regular reporter for the Gastonia Daily Gazette, but from time to time send the Gazette news from Lincolnton. I published in my paper substantially the same story about Tom Lay as that published by the defendant. Upon learning that he had not been arrested or placed in jail, I published a correction of the story."
Both H. A. Querry, the editor, and J. W. Atkins, the manager of theGastonia Daily Gazette, testified as witnesses for the defendant. Each said that he had no ill-will or malice toward the plaintiff at the time of the publication, and that in publishing the news item referring to the plaintiff, they relied upon information furnished by Mr. Claytor, editor of the Lincoln County News.
At the close of all the evidence, the motion of the defendant for judgment as of nonsuit (C. S., 567) was allowed. The plaintiff excepted. *Page 139 
From judgment dismissing the action as of nonsuit, the plaintiff appealed to the Supreme Court, assigning as error the order of the court allowing defendant's motion for judgment as of nonsuit, and the judgment dismissing the action.
There was no evidence at the trial of this action tending to show affirmatively that the publication by the defendant of the news item in which reference was made to the plaintiff was malicious as alleged in the complaint. Any inference to that effect, which it might have been permissible for the jury to draw from the fact that certain statements in the news item referring to the plaintiff were false, was rebutted by the uncontradicted evidence offered by the defendant to the contrary. For this reason, without regard to the provisions of the statute, C. S., 2430, the plaintiff was not entitled to recover punitive damages in this action. It is a well settled principle of the law of damages that such damages may be awarded by the jury only when the conduct of the defendant resulting in injury to the plaintiff was not only wrongful but also malicious, or wanton and reckless. See Ford v. McAnally, 182 N.C. 419, 109 S.E. 91.
All the evidence shows that although certain statements in the news items published by the defendant in its newspaper, and referring to the plaintiff were false in fact, the publication was in good faith, and was the result of an honest mistake, and that there were reasonable grounds for the belief of both the defendant and its correspondent at Lincolnton that the statements were true. The evidence further shows that within ten days after its receipt of the letter of the plaintiff, dated 31 December, 1934, the defendant published in its newspaper a full and fair correction, apology, and retraction, as requested by the plaintiff. For this reason the plaintiff is entitled to recover of the defendant in this action only his actual damages. C. S., 2430. See Osborn v. Leach, 135 N.C. 628,47 S.E. 811. He is not entitled to recover punitive damages, but there was evidence from which the jury could have found that plaintiff had sustained actual damages as the result of the publication by the defendant of a false statement to the effect that he had been arrested for leading and participating in a riot by members of a labor union.
If the statements in the news item published by the defendant in its newspaper and referring to the plaintiff are defamatory and libelous perse, the plaintiff is entitled to recover of the defendant at least nominal damages. Deese v. Collins, 191 N.C. 749, 133 S.E. 92. Under well settled principles of the law of libel, the publication by the *Page 140 
defendant in its newspaper of a false statement that the plaintiff had been arrested in Lincoln County on a charge of leading a riot at the Roseland Mill, participated in by members of the union of which he was a ring leader, was libelous per se. Such statement was calculated to injure the plaintiff and to prevent him from securing employment as a textile operative by manufacturers on whom he was dependent for employment. SeePentuff v. Park, 194 N.C. 146, 138 S.E. 616.
There was error in the allowance by the trial court of defendant's motion for judgment as of nonsuit, and in the judgment dismissing the action. The judgment is therefore
Reversed.