WILLIAM BRYAN ROBINSON v. NATIONWIDE INSURANCE COMPANY.

(Filed 27 March 1968.)

**1. Libel and Slander § 9—**

Where an insurer is under no statutory duty to provide an insured with a written explanation of its reason for cancelling or for failing to renew a policy of automobile liability insurance, an explanation given by the insurer in response to an insured's inquiry as to the reason for cancellation is not rendered privileged by G.S. 20-310(b) or G.S. 20-310(c).

**2. Libel and Slander § 1—**

The term "libel *per se*" means a false written statement which on its face is defamatory.

**3. Libel and Slander § 3—**

Where the alleged publication is not libelous *per se*, a cause of action arises only upon allegations that defendant intended the publication to be defamatory and that it was so understood by those to whom it was published.

**4. Libel and Slander §§ 2, 12—**

Allegations that an insurer informed plaintiff insured by letter of the cancellation of an automobile liability policy because of the insured's "infavorable personal habits" fails to state an action for libel *per se* where the complaint does not allege further circumstances, or that the statement was understood to be defamatory by those who saw it, and that plaintiff suffered special damages.

APPEAL by plaintiff from *Froneberger, J.,* at the 4 September 1967 Session of GASTON.

The plaintiff appeals from a judgment sustaining a demurrer to the complaint on the ground that the complaint does not allege facts constituting a cause of action, the alleged publication being privileged by reason of G.S. 20-310.

The complaint alleges that prior to 13 July 1966 the defendant issued to the plaintiff a policy of automobile liability insurance; on that date it cancelled the policy without reason; thereafter the plaintiff inquired of the defendant as to the reason for the cancellation; the defendant by letter to the plaintiff informed the plaintiff, "The reasons for cancellation of your policy is infavorable [*sic*] personal habits"; the reason so stated is not a valid reason for cancellation of the insurance; the statement is untrue and was published maliciously, wantonly and knowingly without justification or excuse; the plaintiff is informed and believes that the statement "has been communicated" to various agents of the defendant, to the North Carolina Department of Motor Vehicles and to others; because of the statement the plaintiff has been subjected to criticism, his good name has been damaged, his policy of insurance has been wrongfully cancelled

and he has been forced to pay an exorbitant rate for insurance thereafter; and by reason of this statement the plaintiff has suffered mental torture, has had his feelings outraged and has been damaged in his reputation. The prayer of the complaint is for the recovery of alleged actual damages and punitive damages.

*Childers and Fowler for plaintiff appellant.*
*Mullen, Holland & Harrell for defendant appellee.*

LAKE, J.   G.S. 20-310(c) provides that no contract of automobile liability insurance, which has been in effect for 60 days, shall be "terminated by failure to renew" by the insurer unless the insurer gives to the named insured written notice stating that it proposes "to terminate or fail to renew" the contract and that upon receipt of a written request therefor from the named insured it will mail to him a written explanation of its actual reason "for terminating or failing to renew." The statute requires that the insurer, upon receipt of such request, mail to the named insured a written explanation "giving the actual reason or reasons for its failure to renew the contract," and then provides, "Such explanation shall be privileged and shall not constitute grounds for any cause of action against the insurer * * *." The section closes with this provision: "The provisions of this subsection shall not apply to policies of liability insurance issued under the Assigned Risk Plan."

The complaint does not allege that the policy in question was issued under the Assigned Risk Plan. Consequently, there is nothing in the complaint to bring this action within the exception to the absolute privilege granted by G.S. 20-310(c) with reference to such statement by the insurer of its reason for terminating a policy "by failure to renew." However, the complaint does not allege such termination of the plaintiff's policy by the defendant. It alleges that the plaintiff's policy was "cancelled."

G.S. 20-310 applies both to termination by cancellation and to termination by failure to renew. Subsection (b) deals with termination by cancellation and subsection (c) deals with termination by failure to renew. Subsection (b) states the causes for which a policy which has been in effect for 60 days may be terminated by cancellation. It then provides:

"After the aforesaid sixty-day period, a notice of cancellation from the insurer to the insured shall give the statutory reason for which such cancellation is made. Compliance with this paragraph shall be privileged and shall not constitute grounds for any cause of action against the insurer or its representatives.

"The provisions of this subsection shall not apply to policies of insurance issued under the Assigned Risk Plan, and shall apply only to policies of insurance issued on vehicles rated as private passenger automobiles."

There is nothing in the complaint to show that the policy of insurance issued by the defendant to the plaintiff had been in effect 60 days prior to its alleged cancellation. Therefore, it does not appear upon the face of the complaint that either G.S. 20-310(b) or (c) has application to this case.

It does not appear upon the face of the complaint that the defendant was under any duty imposed by either of these statutory provisions to give any explanation in response to the request by the plaintiff as to its reason for cancelling the policy. It follows that the absolute privileges granted by these two statutory provisions to an insurer, complying with the mandate thereof, does not extend to an insurer who, of its own volition, advises the policyholder of its reasons for cancelling the policy. Consequently, the demurrer to the complaint in this action cannot be sustained for the reason stated by the superior court in its judgment. If facts exist giving rise to the absolute privilege conferred upon an insurer by either portion of G.S. 20-310, the defendant may so allege in its answer.

However, the demurrer also asserts that the complaint fails to state facts constituting a cause of action for that it does not allege any publication and for that it does not allege a statement which is libelous *per se* or any facts making the statement, which is alleged, libelous *per quod*. If either of these contentions is correct, the demurrer was properly sustained and the judgment of the superior court must be affirmed, notwithstanding the erroneous reasons stated therein.

The term "libel *per se*" is somewhat confusing. The Restatement of the Law, Torts, § 569, quoted with approval in *Kindley v. Privette*, 241 N.C. 140, 84 S.E. 2d 660, states, "The publication of any libel is actionable *per se*, that is, irrespective of whether any special harm has been caused to the plaintiff's reputation or otherwise." However, not every publication of an incorrect written statement with reference to the plaintiff is a libel of him. In this sense, the term "libel *per se*" means a false written statement which on its face is defamatory. In *Flake v. News Co.*, 212 N.C. 780, 195 S.E. 55, Barnhill, J., later C.J., speaking for this Court, said:

"Libels may be divided in three classes: (1) Publications which are obviously defamatory and which are termed libels *per se;* (2) publications which are susceptible of two reasonable

interpretations, one of which is defamatory and the other is not, and (3) publications which are not obviously defamatory, but which become so when considered in connection with innuendo, colloquium and explanatory circumstances. This type of libel is termed libel *per quod*."

Where the words alleged to have been written and published by the defendant concerning the plaintiff are not, upon their face, susceptible only to a defamatory interpretation, the complaint states no cause of action unless it also alleges that a defamatory meaning was intended by the defendant and understood by those to whom the statement is alleged to have been published. *Wright v. Credit Co.*, 212 N.C. 87, 192 S.E. 844.

In *Flake v. News Co., supra*, this Court said:

"It may be stated as a general proposition that defamatory matter written or printed * * * may be libelous and actionable *per se* * * * if they tend to expose plaintiff to public hatred, contempt, ridicule, aversion or disgrace and to induce an evil opinion of him in the minds of right thinking persons and to deprive him of their friendly intercourse and society. * * *

"In order to be libelous *per se* it is not essential that the words should involve an imputation of crime, or otherwise impute the violation of some law, or moral turpitude, or immoral conduct. * * * But defamatory words to be libelous *per se* must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided. The imputation must be one tending to affect a party in a society whose standard of opinion the court can recognize. * * *

"The general rule is that publications are to be taken in the sense which is most obvious and natural and according to the ideas that they are calculated to convey to those who see them. The principle of common sense requires that courts shall understand them as other people would. The question always is how would ordinary men understand the publication. * * * The fact that super-sensitive persons with morbid imaginations may be able, by reading between the lines of an article, to discover some defamatory meaning therein is not sufficient to make it libelous. * * *

"In determining whether the article is libelous *per se* the article alone must be construed, stripped of all insinuations, in-

nuendo, colloquium and explanatory circumstances. The article must be defamatory on its face 'within the four corners thereof.'"

We think that the statement that one's automobile liability insurance policy has been cancelled because of "infavorable [*sic*] personal habits" is not so obviously defamatory as to meet the requirements of the above test of libel *per se*. Since the complaint does not allege any further circumstances, or that the statement was understood by anyone, to whose attention it came, in a defamatory sense and alleges no special damage suffered by the plaintiff as a consequence of its publication, if any, we conclude that the complaint does not state a cause of action for this reason.

A further defect in the complaint is that it does not allege publication by the defendant to any person other than the plaintiff. This is not a publication within the meaning of the law. The allegation that the statement in the letter from the defendant to the plaintiff "was communicated" to any other persons is not an allegation that it was communicated to them by the defendant.

For these reasons the demurrer to the complaint was properly sustained.

Affirmed.