BETTY B. ARNOLD v. MAX W. SHARPE AND COMMUNITY BANK OF CAROLINA

No. 7718SC843

(Filed 15 August 1978)

**1. Libel and Slander § 2— libel per se**

     A publication is libelous per se if it tends, without aid of extrinsic proof, to expose the plaintiff to contempt or ridicule or to induce an evil opinion of him in the minds of people who hold to normal mores.

Arnold v. Sharpe

2. **Libel and Slander § 5.1— writing that employee is trouble maker and gossip—libel per se**

It is libelous per se to write of an employee that she is a trouble maker and gossip who cannot get along well with other employees.

3. **Libel and Slander § 6— libelous memorandum—publication**

There was sufficient evidence for the jury to conclude that a libelous typewritten memorandum prepared by a bank vice president was communicated to the bank president where the vice president testified that the memorandum was delivered to the president, since the jury could reasonably conclude that the president of a bank would read a memorandum submitted to him by a vice president of the bank.

4. **Libel and Slander § 10.1— memorandum about employee—qualified privilege—malice**

Qualified privilege was a defense to a former bank employee's action for libel based on a bank vice president's memorandum about the employee sent to the bank president if the vice president acted in good faith and without malice; however, the jury could conclude that the vice president's memorandum was induced by actual malice where there was evidence tending to show that the vice president had approved of the way plaintiff did her job prior to the day she was discharged as a bank employee, that on that day the vice president became angry with plaintiff because she reported to the president that the vice president took no action with regard to malingering employees, and that the vice president then wrote the memorandum which led to plaintiff's discharge.

5. **Libel and Slander § 15— libel action—financial condition of defendant—punitive damages**

Financial statements of a bank were admissible on the question of punitive damages in an action against the bank for libel.

Judge HEDRICK dissenting.

APPEAL by plaintiff from *Walker (Hal H.), Judge.* Judgment entered 26 May 1977 in Superior Court, GUILFORD County. Heard in the Court of Appeals 28 June 1978.

This is an action by the plaintiff for libel and for blacklisting the plaintiff in violation of G.S. 14-355. No evidence was presented as to blacklisting. The plaintiff's evidence was to the effect that in February 1975, she was employed by Community Bank of Carolina and that Max W. Sharpe was a vice president of the bank. She reported to him that some of the employees of the bank were taking more than an hour for lunch and having other employees punch them in on the time clock. Mr. Sharpe told her "it was none of her business." When she reported this again to Mr. Sharpe and he again did nothing about it, she reported the matter to the president of the bank on 24 February 1975. Following conferences between Mr. Sharpe and the bank president and

between Mr. Sharpe and Mrs. Arnold, Mrs. Arnold was that day discharged. Betty B. Arnold testified that prior to the day she was discharged Max W. Sharpe had never criticized her, but had only praised her. She testified further that when Mr. Sharpe returned from his conference with the bank president he seemed "very upset." He told her she had gone over his head and after some conversation "he got mad" and called her a "divorcee." Mary Jane Moore testified that she was employed by the bank in February 1975. Mr. Sharpe's desk was in an open area facing the people whom he supervised. It had drawers and it was not surrounded by any type of enclosure. Mary Jane Moore testified further that on 24 February 1975, Sarah Williams said something to her about a paper that was lying on Mr. Sharpe's desk and Mary Jane Moore walked over and glanced at it. It said "something to the effect that she gossiped and she could not get along well with employees and that she was a troublemaker. . . As to whether anyone was named in the handwritten document I don't recall." Three other employees of the bank—Mrs. Perry, Mrs. Williams, and Mrs. Taylor—were present when Ms. Moore looked at the paper and she heard the paper discussed in the bank "lots of times." The defendant Max W. Sharpe was called as a witness by the plaintiff and testified that he prepared a handwritten memorandum in regard to the plaintiff from which a typed memorandum was made which was delivered to the president of the bank. The handwritten memorandum was then destroyed. At the close of the plaintiff's evidence the defendant's motion for a directed verdict was allowed and the plaintiff has appealed.

*Smith, Patterson, Follin, Curtis, James and Harkavy, by Norman B. Smith, Michael K. Curtis and Jonathan R. Harkavy, for plaintiff appellant.*

*Jordan, Wright, Nichols, Caffrey and Hill, by William L. Stocks and Robert D. Albergotti, for defendant appellees.*

WEBB, Judge.

For reasons stated in this opinion, we reverse the judgment of the superior court.

Libel is one of the two torts of defamation, the other being slander. It is an invasion of the interest in reputation and good name and requires that something be communicated to a third person that affects that interest of the plaintiff. To be libelous, the communication must usually be in writing although other

types of communication not germane to this case have been held libelous. *See* Prosser, W., Handbook of The Law of Torts (4th Ed. 1971), Chap. 19, § 112. Libels may be divided into three classes: (1) libel per se; (2) publications which are susceptible to two reasonable interpretations, one of which is defamatory and the other is not, and (3) libel per quod which are publications not obviously defamatory, but which become so when considered in connection with innuendo, colloquim and explanatory circumstances. *Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55 (1938) and *Robinson v. Nationwide Insurance Co.*, 273 N.C. 391, 159 S.E. 2d 896 (1968). Unless a publication is actionable per se, the plaintiff must prove special damages. Special damages were not proved in this case, and the directed verdict was proper unless the publication by defendant Sharpe was libelous per se.

[1] A publication is libelous per se if it tends, without aid of extrinsic proof, to expose the plaintiff to contempt or ridicule or to induce an evil opinion of him in the minds of people who hold to normal mores.

In *Flake v. Greensboro News Co., supra*, at 786, the Supreme Court said:

> "It may be stated as a general proposition that defamatory matter written or printed, or in the form of caricatures or other signs, may be libelous and actionable *per se*, that is, actionable without any allegations of special damage, if they tend to expose plaintiff to public hatred, contempt, ridicule, aversion or disgrace and to induce an evil opinion of him in the minds of right thinking persons and to deprive him of their friendly intercourse and society.
>
> *  *  *
>
> . . . But defamatory words to be libelous *per se* must be susceptible of but one meaning and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided. The imputation must be one tending to affect a party in a society whose standard of opinion the court can recognize."

[2] We hold that it is libelous per se to write of an employee that she is a trouble maker, a gossip and could not get along well with other employees. We believe these words are susceptible of but one meaning and tend to expose the plaintiff to contempt,

ridicule or aversion by a recognized standard of opinion in society.

Words which have been held actionable per se are: "Do you know Captain McCall of the Charlotte Police Department? Call him and he can tell you about all the shady deals Mr. Badame has pulled." *Badame v. Lampke*, 242 N.C. 755, 89 S.E. 2d 466 (1955); allegations that a minister who as a member of a church "had been a disorderly member thereof in the sense that he was unwilling to cooperate in maintaining peace and the right spirit in the church but caused trouble amounting to a continuous upheaval and disrupted the peace and harmony of the church and therefore was excluded therefrom." *Kindley v. Privette*, 241 N.C. 140, 84 S.E. 2d 660 (1954); the statement by a butcher that his competitor had slaughtered a mad dog-bitten cow, *Broadway v. Cope*, 208 N.C. 85, 179 S.E. 452 (1935). A publication was said to be actionable per se which permitted inferences that (1) plaintiff, secretary and treasurer of the Duplin County Farm Bureau, did not pay certain women fees which they were due, (2) she did so because she had no records, (3) that the records had been missing for some time, (4) that important records of the Farm Bureau, which should have been in plaintiff's custody, were missing without explanation, and (5) the sheriff was called in to investigate the matter of the missing records. *Bell v. Simmons*, 247 N.C. 488, 101 S.E. 2d 383 (1958). A publication was held libelous per se which said of an ordained minister that there was not in this generation "a more ignorant man . . . or one less charitable toward men who might honestly disagree with him." *Pentuff v. Park*, 194 N.C. 146, 138 S.E. 616 (1927). It has been held to be libel per se for a newspaper to publish that the plaintiff was the leader of a strike and had been arrested for trespassing on mill property. The Court said this statement was calculated to injure the plaintiff and to prevent him from securing employment as a textile worker. *Lay v. Gazette Publishing Co.*, 209 N.C. 134, 183 S.E. 416 (1936). Words which have been held not to be actionable per se are: the plaintiff had "infavorable [sic] personal habits"; *Robinson v. Nationwide Insurance Co., supra.* "The plaintiff had Negro blood in his veins"; *Deese v. Collins*, 191 N.C. 749, 133 S.E. 92 (1926). From a reading of these cases, we believe it is libelous per se to publish of a person words which tend to deprecate a person in his or her job or profession. We believe that is what the memorandum of Mr. Sharpe tended to do for the plaintiff.

[3] Having determined that the publication by defendant Sharpe was libelous per se, we turn to the question of communication. Unless the defamatory words were communicated to a third person they are not actionable. The plaintiff contends there were communications when Mary Jane Moore read the handwritten memorandum and when the bank president read the typewritten memorandum.

Considering first the reading of the handwritten memorandum by Mary Jane Moore, there is no direct evidence that Mary Jane Moore saw the plaintiff's name on the memorandum. Max W. Sharpe testified that he prepared, at his desk, a handwritten memorandum in regard to Mrs. Arnold, but he did not remember whether he left it on his desk. He said it was substantially the same in content as the typewritten memorandum which he delivered to the bank president. Mary Jane Moore testified that after being told of a memorandum by other employees of the bank, she read a part of it while it was lying on Mr. Sharpe's desk. Mary Jane Moore testified she did not recall seeing the plaintiff's name. The question then is whether Mary Jane Moore could know from other evidence that the memorandum referred to the plaintiff. She testified she heard the memorandum discussed in the bank "lots of times", but she did not testify that anyone told her Mrs. Arnold's name was on it. We hold that there is evidence from which the jury could find that Mrs. Arnold's name was on the memorandum, but there is no evidence from which it could be concluded that Mary Jane Moore knew the memorandum was referring to the plaintiff. For this reason, we hold there was not a communication to Mary Jane Moore.

[4] We hold that there is sufficient evidence for the jury to conclude that the typewritten memorandum was communicated to the bank president. Mr. Sharpe testified it was delivered to the president. We believe the jury could reasonably conclude that the president of the bank would read a memorandum submitted to him by a vice president of the bank. As to this communication to the bank president, the defendants have pleaded and rely on a qualified privilege as a defense.

50 Am. Jur. 2d, Libel and Slander, § 195, at pages 698-700 says:

"Conditional or qualified privilege is based on public policy. It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, and makes a showing of falsity and actual malice essential to the right of recovery.

A qualified or conditionally privileged communication is one made in good faith on any subject matter in which the person communicating has an interest, or in reference to which he has a right or duty, if made to a person having a corresponding interest or duty on a privileged occasion and in a manner and under circumstances fairly warranted by the occasion and duty, right, or interest. The essential elements thereof are good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty. The transmitter must have an interest or duty in the subject matter, and the addressee must have a corresponding interest or duty, but such duty may be moral or social, rather than a legal one. The defense of qualified privilege does not extend to a publication to the general public."

Max W. Sharpe's position as vice president of the bank and the occasion on which he delivered the memorandum to the president of the bank were sufficient to protect the parties from liability if Max Sharpe was acting in good faith. In order to overcome the defense of qualified privilege, the plaintiff must prove that Max Sharpe's action was induced by actual malice. *Jones v. Hester*, 260 N.C. 264, 132 S.E. 2d 586 (1963). We have held that the communication is libelous per se. The Supreme Court of North Carolina has said that defamatory charges which are actionable per se raise a presumption of malice. *Stewart v. Nation-Wide Check Corp.*, 279 N.C. 278, 182 S.E. 2d 410 (1971). We do not rest on this presumption. We hold there is evidence in this case from which the jury could conclude that Max W. Sharpe's communication was induced by actual malice. There is evidence that prior to the day she was discharged, he had approved of the way plaintiff performed her job, that on that day he became angry with her because she reported to the president that he took no action in

regard to malingering employees, and that he then wrote the memorandum which led to her discharge. We believe this was sufficient for the jury to infer actual malice.

[5] The last question presented by this appeal is in regard to a matter of evidence. The plaintiff offered in evidence and the court excluded the financial statements of the bank. We hold this was error. If the jury should find there was actual malice, they should be allowed to award punitive damages. *Stewart v. Nation-Wide Check Corp., supra.* On the question of punitive damages, evidence relating to the defendants' financial condition is admissible. *Roth v. Greensboro News Co.*, 217 N.C. 13, 6 S.E. 2d 882 (1940).

Reversed and remanded.

Judge MORRIS concurs.

Judge HEDRICK dissents.

Judge HEDRICK dissenting.

In my opinion the written memorandum of and concerning the plaintiff allegedly communicated to the bank president by the defendant Sharpe was not libelous per se. Furthermore, I disagree with the majority that the evidence raises an inference that the defendant acted out of malice so as to destroy the qualified privilege which the evidence revealed existed as a matter of law.