## CIRCUIT COURT OF WARREN COUNTY

**Higgs**

   **v.**

**Erie Insurance Exchange et al.**

   **January 11, 1983**

   **Case No. (Law) 5553**

**By JUDGE HENRY H. WHITING**

This matter is before the Court for a ruling on a motion for summary judgment.

This law action was filed to recover damages for allegedly slanderous statements contained in a notice from the insurance company to plaintiffs that the liability insurance policy was not going to be renewed and assigning the reasons therefor as:

> On September 8, 1978, you submitted a $334.60 estimate to replace a radio which had been stolen from your vehicle. Your estimate included money to replace the speakers which belong to the radio. However, our investigation uncovered the fact that the speakers in your vehicle were not stolen. We paid $221.70 to settle your claim. Because of your attempt to defraud this insurance company, we are non-renewing your policy.

Plaintiffs allege defamation by reason of that statement, contending there was a publication of the defamation because copies of the notice went to a branch office of the defendant company and to the issuing agent.

The insurance company has filed interrogatories and requests for admissions which establish without contradiction:

(1) That no one in the branch office or the issuing agency knew the reasons for cancellation, that information not being on their copies of the notice of cancellation.

(2) The plaintiffs have answered interrogatories in which they admit in Paragraph 14(3) that the only basis for plaintiffs' allegation that others than the home office of defendants were aware of the reasons for cancellation was the fact that copies of the notice of cancellation (which show on the face that the reasons therefor were *not* placed on the copies) were mailed to McGreevy Insurance Agency and Erie Insurance Exchange (Paragraph 14 of answers to interrogatories).

Defendants have moved for summary judgment, assigning the following grounds, which will be disposed of as listed:

(1) There was no publication of the alleged defamation. In this case the defendants have admitted they have no evidence to show any publication except as contained in the notice of cancellation dated December 4, 1980. The notice of cancellation states on its face that the reasons for the cancellation are shown *only* on the policy holder's copy and there is no contradiction of this in this case; thus, the notice itself states no such publication was had. Moreover, both of the addressees who received copies of that letter filed affidavits undenied by plaintiffs which indicate they were not told the reasons for cancellation on their copies. Therefore, the Court need not consider whether it would have been within the course of the McGreevy duties and the duties of the service branch office to be advised of the reasons for the termination. Suffice it to say that there might have been a good deal more reason for those parties to have known the reasons for cancellation than the employee called in as a witness for the reasons for firing an employee in *Montgomery Ward Co.* v. *Nance*, 165 Va. 363 (1935), or the extra employees assembled when another employee was fired in *Thalhimer Bros., Inc.* v. *Shaw*,

156 Va. 863 (1931). Plaintiffs have not argued that the secretary who typed it might be a third party.[1]

The Court holds that there has been no publication as a matter of law.

However, Paragraph 3 of the motion for judgment impliedly charges a violation of the insulting words statute, § 8.01-45, Virginia Code. Neither counsel discuss the issue in their memoranda. The Court has done its own research on this problem.

If the words used are within that statute, no publication is necessary. *Hines* v. *Gravins*, 136 Va. 313 (1923); *Carwile* v. *Richmond Newspapers, Inc.*, 196 Va. 1 (1954). The words used could be construed as charging defendants with the obtaining of money upon false pretenses, a crime. *Hines* v. *Gravins*, *supra*, held a somewhat similar charge that a defendant participated in some way in a theft was within the contemplation of the insulting words statute. 136 Va. at 318-319. The case was later modified on another ground so that the initial holding was not essential in the final decision, but the rule was clearly stated. A later case, *Darnell* v. *Davis*, 190 Va. 701 (1950), said charging a criminal trespass was also within that statute but not actionable in that particular case because uttered in a judicial proceeding.

Counsel for the defendants may reply to this within fourteen days since counsel for plaintiffs filed no authorities in support of the allegations of Paragraph 3. Although the balance of the ruling makes the point moot if the case is appealed this point might again become important and therefore the trial court's conclusion should not be without benefit of argument and authority from the defendants.

(2) Virginia Code § 38.1-381.5(g) grants absolute immunity in this case.

The statute needs no construction, it is plain, clear and unambiguous in granting absolute immunity if the case comes within its provisions. The insurance company

---

[1] Plaintiffs correctly recognize that Virginia, unlike North Dakota, for example, in its case of Rickbeil v. Grafton Deaconesses Hospital, 23 N.W.2d 247 (1946), has held that dictation to a secretary is not a publication. Chalkey v. Atlantic Coastline Railroad, 150 Va. 301 (1928), Thalhimer and Montgomery Ward, supra.

is required by law to tell the policy holder why the policy is not being renewed, and this company did what the law required. While courts should be careful not to extend an absolute immunity if there is doubt as to the legislative intent where a legislature has clearly and unequivocally done so, the courts are duty bound to follow the legislative mandate. This statute cannot be read to grant a qualified immunity. By its terms it expressly says:

> There shall be *no liability* on the part of and *no cause of action of any nature shall arise* against. . . any insurer, as to reasons for cancellation or refusal to renew, or any statement made by any of them in complying with this section. (Emphasis added)

This Court cannot read any limitation on this broad language.

*Emo* v. *Millbank Mutual Insurance Co.*, 183 N.W.2d 508 (N.D. 1971), construed a similar statute in North Dakota, but the case held that the privilege did not extend to libelous remarks involving a party who was not the insured. Dictum indicates North Dakota will probably apply only a qualified privilege as a part of its liberal policy not to "condone libel" (*Id.*, at 515). North Dakota and Virginia simply have a difference in philosophy on these matters and its dissenting Justices pointed out the clear statutory language granting an absolute privilege.

(3) The contention that Erie's subsequent letter of December 8 was, in effect, a republication of this libel, citing *Robinson* v. *Nationwide Insurance Co.*, 159 S.E.2d 896 (N.C. 1968), is unsound.

> A mere reference to another writing which contains defamatory material does not constitute an actionable repetition or republication of the libelous matter. Libel and Slander, § 169, 50 Am. Jur. 2d 672.

*Robinson* was a decision on a demurrer in which the court held that since the pleadings did not show that the insurance company was within the scope of the statute, the

court would have to assume it was not, but the clear inference is that if the pleadings were amended and the proof showed it, absolute immunity would be afforded under the statute.

The motion for summary judgment is granted on this ground as well.

(4) The person who got the information got it in the ordinary course of business and therefore even if there was only a qualified privilege, it existed in this case. Although not necessary for decision, in order to save the Court and counsel time later if the case should be reversed on the second ground, the Court finds that the defense of qualified privilege is good as a matter of law on the following bases:

(a) The persons given the information were only the writer and the insured and therefore there was no publication.

(b) Even if the McGreevy Insurance Agency personnel and the Silver Spring branch office had gotten the information, they might have had sufficient connection with it as to justify their receiving it. However, the Court believes this would be an issue of fact on this one point and could only be resolved after hearing all the evidence.

(c) There is no evidence of malice in the publication. About all the plaintiffs can say is that there was no investigation beyond the initial report, but this is not proof of malice. In *Nance, supra,* the utterance was known to be false. In *Chesapeake Ferry Co.* v. *Hudgins,* 155 Va. 874 at 908 (1931), the court held that an erroneous communication made in the ordinary course of business was qualifiedly privileged and if the person issuing the communications reasonably believed them to be true, the privilege is not exceeded. The verdict for a plaintiff was set aside because of lack of proof of the knowledge of the falsity of the statement. So also in *Peoples Life Insurance Co.* v. *Talley,* 166 Va. 464 (1936), strong words uttered in firing an employee in the presence of other employees, even if untrue but uttered on a privileged occasion, require proof of actual malice in the utterance or of language so violent and disproportionate to the occasion as to raise an issue of fact. In *Peoples* a verdict for a plaintiff was set aside because of the failure of proof sufficient to submit to a jury.

Merely alleging that the defendants had not investigated the accusation that the plaintiffs attempted to defraud the defendant is insufficient to show malice in the face of the other allegations in the case from which the insurance company could draw an inference of an intent to defraud in the submission of a claim for property stolen, which, in fact, was later discovered not to have been stolen. The Court does not believe the insurance company had a duty to go beyond the facts as then presented to it in deciding to cancel the policy and would sustain the motion on that ground as well.