**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARKET AMERICA, INCORPORATED,
*Plaintiff-Appellant,*

v.

RAY ROSSI; TANDY BROWN; CRAIG
MELTON; PHIL LANE; JULIA LANE;
SHERI FREY CONNERS,
*Defendants-Appellees,*

and

KATHLEEN FRAME; PETE TORTOLINI;
MIKE PERRAULT; GEORGE SMITH;
DICK CUTHREL; RICK MOCCIA,
*Defendants.*

No. 99-2245

MARKET AMERICA, INCORPORATED,
*Plaintiff-Appellee,*

v.

RAY ROSSI; TANDY BROWN; CRAIG
MELTON; PHIL LANE; JULIA LANE;
SHERI FREY CONNERS,
*Defendants-Appellants,*

and

KATHLEEN FRAME; PETE TORTOLINI;
MIKE PERRAULT; GEORGE SMITH;
DICK CUTHREL; RICK MOCCIA,
*Defendants.*

No. 99-2333

Appeals from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CA-97-891-1)

Argued: September 27, 2000

Decided: November 14, 2000

Before WILKINSON, Chief Judge, and NIEMEYER and
LUTTIG, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Pressly McAuley Millen, WOMBLE, CARLYLE, SAN-
DRIDGE & RICE, P.L.L.C., Raleigh, North Carolina, for Appellant.
Jonathan A. Berkelhammer, SMITH, HELMS, MULLISS &
MOORE, L.L.P., Greensboro, North Carolina, for Appellees. **ON
BRIEF:** Keith W. Vaughan, Sean E. Andrussier, WOMBLE, CAR-
LYLE, SANDRIDGE & RICE, P.L.L.C., Raleigh, North Carolina, for
Appellant. Allison K. Overbay, Monica F. Speight, SMITH, HELMS,
MULLISS & MOORE, L.L.P., Greensboro, North Carolina, for
Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

This appeal presents several related issues arising from an intra-
enterprise dispute between Market America, Inc., a pyramid-style
marketing company, and some of its contract-distributors. When sev-
eral of Market America's distributors attempted to serve also as dis-
tributors for another, similar type of company, Market America filed

this action against them to enforce its non-compete agreements. The distributors filed counterclaims for defamation arising from statements made by Market America during the enforcement effort and for the violation of unfair competition laws.

The district court ruled as a matter of North Carolina law, which was made applicable by the agreements, that the non-compete clause was unenforceable because it was not geographically limited. The court submitted the parties' numerous other claims to a jury, which rejected Market America's claims and ruled in favor of the distributors on their defamation claims, awarding each defendant $30,000 in compensatory damages. The district court trebled the jury's awards pursuant to applicable state law. From the judgment entered, both parties appealed.

On appeal, Market America argues that the district court erred in ruling (1) that its non-compete agreement was unenforceable; (2) that it is entitled to judgment as a matter of law on the defamation claims; (3) that the North Carolina Unfair Trade Practices Act ("UTPA") was not applicable to the defendants who are Virginia residents; and (4) that the district court erred in trebling damages under the UTPA. On their cross-appeal, the distributors argue (1) that the district court erred in finding that Market America's communications to its distributors enjoyed a qualified privilege; (2) that the district court erred in reducing some of the defendants' damages awards; and (3) that the district court abused its discretion in denying them attorneys fees. For the reasons that follow, we affirm.

I

Market America describes itself as a "product brokerage company" that sells a variety of products such as health and nutritional products, jewelry, and household cleaners through individuals who are independent contractors or "distributors." These distributors are encouraged to recruit other distributors to join Market America, and these other distributors, who are most often friends or family of the recruiter, become part of their recruiter's "downline." Every distributor's income is based on his own sales, as well as a commission from sales generated by distributors in his downline. Market America began its

business in 1992, and by 1999 it had 70,000 distributors and sub-distributors who generated gross sales of $66.3 million.

Ray Rossi and Tandy Brown, two of the defendants in this case, became distributors of Market America in 1994. The other defendants joined Market America as part of Rossi and Brown's downline over the next two years. All of the defendants were successful, and Rossi and Brown, through their own sales and those of their downline, earned more than $300,000 in annual commissions.

At the time the defendants joined Market America as distributors, they executed agreements by which they recognized certain trade secrets and agreed not to compete. The noncompetition clause provides in relevant part:

> I agree not to enter into competition with Market America by participating as a[n] Independent Contractor, consultant, officer, shareholder, director, employee or participant of another company or direct sales program using a similar matrix marketing structure or handling similar products to that of Market America or involving a Distributor of Market America in such a program for a period of six months from my written resignation or termination as an Independent Distributor of Market America.

In January 1997, Rossi and Brown became involved with another pyramid-style company, the now-defunct International Heritage Inc., which sold high-end consumer products such as golf clubs and hand-bags. Rossi and Brown also had members of their downline become distributors for International Heritage. But Rossi and Brown, as well as its downline members under International Heritage, continued to work for Market America. They did not, however, advise Market America of their participation in the International Heritage program.

When Market America learned of the defendants' involvement with International Heritage, it suspended them and filed an action in a North Carolina state court, obtaining a temporary restraining order prohibiting the defendants from communicating with any other distributor regarding the litigation. At the same time, Market America circulated a three-page letter to every distributor in Rossi and

Brown's downline, as well as to others. This letter was sent to 7,200 persons.

The letter, the text of which formed the basis of defendants' counterclaims for defamation, stated that Market America had "received hard proof that [defendants'] unscrupulous activities and plans to undermine the company and business continue, and in fact, have intensified." It went on to allege that "there ha[ve] been outright threats made to some Distributors" and that "[defendants'] intentions are to undermine Market America and Distributors' businesses." The letter accused the defendants of being "bandits" and closed by noting that "we are not letting the fox in the hen house. WE WILL NOT LET THEIR GREED AND AVARICE UNDERMINE OR DESTROY THE UNFRANCHISE SYSTEM." Most of the letter is devoted to a stinging lecture about the company's dedication to pursue vigorously all its legal remedies against individuals who breach the non-compete clause. The three single-spaced pages contain a multitude of hyperbolic statements regarding the danger to the company posed by such breaches.

In addition to sending out the letter, Market America circulated an audiotape to several thousand persons broadcasting a similar message about "Ray Rossi, Tandy Brown and some people in their organization" whose names could be obtained by "call[ing] up your upline Advisory Council or trainer or . . . the legal department at the company." The text of audiotape statements was similar to the text of the letter.

After being served through process that issued from the state court, the defendants removed the case to federal court and filed numerous counterclaims against Market America. As the pleadings stood before the district court, Market America alleged claims against the distributors for breach of contract, misappropriation of trade secrets, unfair and deceptive trade practices, and tortious interference with contract, and, through their counterclaims, the defendant-distributors alleged claims against Market America for libel, slander, unfair deceptive trade practices, and illegal restraint of trade.

Following cross-motions for summary judgment, the district court framed the issues for trial and ruled, as a matter of law, that the non-

compete clause did not apply to defendants' conduct because it proscribed only conduct occurring in the six-month window *following*, not before, defendants' termination or resignation. The district court also found as a matter of North Carolina law that the non-compete clause constituted an unenforceable, illegal restraint of trade, because the clause was "not 'reasonable both as to time and territory.'" Most of the parties' claims were submitted to the jury which returned a verdict in favor of the defendants. Because the court instructed the jury that Market America's communications to its distributors were qualifiedly privileged, the defendants were required to carry the greater burden on their defamation claims of showing that the defamatory statements were made with malice or were excessively published. The jury found that Market America had not acted with malice when it wrote and distributed the letter, but that it had acted with malice when it recorded and distributed the follow-up audiotape. The jury also found that Market America had excessively published the letter as to some of the defendants. It awarded each defendant $30,000 in compensatory damages, and the court trebled those damages under the UTPA. The court denied the distributors' claims for attorneys fees requested under the UTPA.

## II

Market America contends first, relying on *Market Am., Inc. v. Christman-Orth*, 520 S.E.2d 570 (N.C. App. 1999), which upheld the very same agreement in a different action, that the district court erred in concluding that its non-compete agreement was unenforceable. The distributors, as well as the district court, noted, however, that the *Christman-Orth* case was a lower court decision and that the Supreme Court of North Carolina has never upheld a non-compete clause without any geographical limitation. They cite to *Professional Liab. Consultants, Inc. v. Todd*, 478 S.E.2d 201 (N.C. 1996), *reh'g denied*, 483 S.E.2d 175 (1997), and *American Hot Rod Ass'n, Inc. v. Carrier*, 500 F.2d 1269 (4th Cir. 1974). Were we to decide this issue, our task would be to offer our best judgment about what we believe the North Carolina Supreme Court would do if faced with the issue. *See Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir. 1999). We explained in *Food Lion* that in determining what the North Carolina Supreme Court would do, we would have to "consider all of the authority that the [North Carolina Supreme Court] would, and we

should give appropriate weight to the opinions of [North Carolina's] intermediate appellate courts." *Id.*

In this case, we need not conduct this analysis, however, because the only remedy available to Market America, were we to agree with its legal position, would be to vacate the district court's summary judgment and order a new trial. Yet Market America has requested only reversal of the district court's rulings on the non-compete issue and entry of a judgment as a matter of law in its favor. Market America does not request a new trial, and at oral argument, it made clear to the court that it did not want the court to order a new trial even if that were the only available remedy for its appeal. Without permitting us to award a new trial, Market America forecloses our authority to review the enforcement of the non-competition agreement because we may not provide an advisory opinion. *See Maritime Overseas Corp. v. NLRB*, 955 F.2d 212, 223 (4th Cir. 1992).

Market America next argues that it was entitled to judgment as a matter of law on the defendants' defamation counterclaims. It maintains that the statements published by Market America "were neither excessively published nor published with actual malice." We believe, however, that these questions were properly submitted to the jury. The contents of the letter and the audiotape contain evidence from which the jury could have based a finding of actual malice. In addition, the jury could have found that circulation to over 7,000 persons was excessive publication. The fact that Market America chose to circulate an audiotape after it had already circulated a letter could also be found to constitute both malice and excessive publication, either of which would have been sufficient to overcome the qualified privilege found by the district court to exist in this case.

Market America contends that several of the defendants who were not named in the audiotape explicitly could not succeed on their defamation claims. North Carolina law, however, authorizes defamation claims even where the defamatory publication only refers to persons implicitly. *See Arnold v. Sharpe*, 246 S.E.2d 556, 560 (N.C. App. 1978), *rev'd on other grounds*, 251 S.E.2d 452 (N.C. 1979). The only requirement in such a case is the existence of some evidence that a recipient of the communication knew to whom the communication was referring. In this case, the jury had evidence that the tape went

to some of the same people to whom the letter was sent and that some of these people who received both communications were in Rossi and Brown's downline. Because the letter named the defendants explicitly, a person receiving both the tape and the letter would understand that the tape was referring explicitly to the persons named in the letter.

Market America argues also that the UTPA does not apply to the defendants because they are Virginia residents. However, the district court did not err in concluding that North Carolina has "a substantial relationship to the particular conduct giving rise to the unfair and deceptive trade practices claim." *Jacobs v. Central Transp., Inc.*, 891 F. Supp. 1088, 1111 (E.D.N.C. 1995), *rev'd in part on other grounds*, 83 F.3d 415 (4th Cir. 1996). In this case, Market America, a North Carolina company, took action against its distributors with business operations in North Carolina by sending a defamatory letter to over 7,000 persons, at least 1,600 of whom were distributors residing in North Carolina. We believe that this provides a sufficiently substantial relationship with the state to justify application of the state's UTPA.

Finally, we reject Market America's challenge made to the district court's trebling of the defamation awards on the ground that many of the statements were made without malice. Market America would be entitled to a malice standard only if it were a public figure, which it is not. *See Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 774-75 (1986).

Because the distributors have succeeded in their defense of the defamation verdict, we need not reach their contention that the verdict should not have been subject to the higher standard imposed when statements are qualifiedly privileged. We also conclude that the district court did not abuse its discretion in interpreting the jury's damage awards of some defendants to give them a lesser amount and in denying defendants an award of attorneys fees.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.