MATTHEWS, CREMINS, McLEAN, INC. v. MICHAEL NICHTER, JOHN GASKELL, AND MEDIA COMMUNICATIONS, INC.

No. 7826SC904

(Filed 3 July 1979)

**Libel and Slander § 5.2— defamation of business reputation—libel per se**

Letters sent by defendants to certain television stations were libelous *per se* where they tended to disparage plaintiff's integrity in its business dealings by asserting that plaintiff breaches its contracts and fails to pay its bills.

APPEAL by plaintiff from *Ervin, Judge*. Judgment entered 13 April 1978 in Superior Court, MECKLENBURG County. Heard in the Court of Appeals 12 June 1979.

Plaintiff appeals from an order dismissing its action at the close of plaintiff's evidence. Plaintiff instituted this suit against the individual and corporate defendants for alleged conversion of funds, unlawful tying arrangements and defamation. Plaintiff requested both compensatory and punitive damages. Defendants denied any liability and counterclaimed for damages for breach of contract.

The evidence tends to show that plaintiff is an advertising agency located in Charlotte. In 1974, plaintiff was authorized by its client, National Automotive Parts Association (NAPA), to institute a national television advertising campaign. As plaintiff did not have a media buying capacity sufficient to handle NAPA's business, it contracted with defendants to buy radio and television time in various markets. Defendant corporation, Media Communications, Inc. (MCI), is a media buying service located in New York. The individual defendants are officers of MCI. In January, 1975, the parties agreed that MCI would buy television advertising time for about one-half of NAPA's distribution areas. The advertising year was divided into two segments: the first flight which was to run between January and June of 1975 and the second flight which was to start that fall.

During the first flight, MCI contacted various television stations to determine the availability of television advertising spots. With plaintiff's approval, MCI would buy these spots. Once the stations had broadcast the advertisements, they would bill MCI. Plaintiff would pay MCI the amount of the charges within fifteen

days of their receipt. MCI would pay the stations within fifteen days of receiving payments from plaintiff.

The relationship between plaintiff and MCI went well during the first flight. In June, 1975, therefore, plaintiff authorized MCI to proceed with the second flight. Soon thereafter, however, plaintiff learned that defendants were attempting to tie the NAPA advertising to a program, "Northwest Traveler," which MCI was trying to schedule. Defendants had sent letters to various stations indicating that acceptance of the "Northwest Traveler" was a condition of receiving the NAPA advertising. Neither plaintiff nor NAPA had approved this arrangement. Upon learning of this situation, plaintiff terminated its contract with defendants during the first week in August, 1975. There was no contract provision concerning termination. Defendants had begun work on five stations for the second flight and were authorized to continue that work.

Upon termination, plaintiff had fully paid MCI for the first flight. It discovered, however, that MCI had failed to pay some of the stations as had been the agreed procedure. Plaintiff received several letters from various stations notifying it that these bills had not been paid. Upon advice of counsel, plaintiff withheld payment from MCI for the five buys in the second flight and paid the stations directly.

MCI instituted an action in New York against plaintiff for breach of contract. On 24 October 1975, defendants wrote letters to various television stations which read as follows.

"Time has been placed on your station for NAPA/Matthews, Cremins, McLean with Media Communications, Inc. acting solely as agent for the purchase. Our records indicate your (sic) have been paid for the bulk of the schedule ordered. The time currently unpaid became payable after Matthews, Cremins, McLean terminated our agency. The termination by Matthews, Cremins, McLean constituted a breach of its contractual arrangement, and as a result Media Communications, Inc. has been forced to institute legal proceedings to recover damages it incurred.

In view of the fact that we acted in this transaction solely as the agent for Matthews, Cremins, McLean and Matthews,

Cremins, McLean terminated the agency we suggest that you contact Matthews, Cremins, McLean regarding payment of the outstanding balance.

Media Communications, Inc. has enjoyed its past relationship with your station. You will note that in all of our prior transactions with you either as a principal or as an agent acting for our clients your invoices have always been paid.

I think it is important at this point to note that not only in our dealing with you, but also in our dealings with the industry, a situation such as this has never happened to Media Communciations, Inc. Quite frankly we are embarrassed by it. In all our prior relationships our clients have met their obligations and such a course as this current action has not been necessary.

However the need has arisen and we have been forced to institute legal proceedings to protect our interests. We are sorry for any inconvenience you might be caused by this unfortunate chain of events. Please feel free to contact me directly if I can be of any help personally in this matter."

The letters were signed by the defendant, Michael Nichter. Plaintiff learned of these letters when copies were sent to plaintiff by the station representatives. Two stations from which plaintiff received copies were in West Virginia and South Dakota. As to those two stations, plaintiff had paid MCI for their first flight broadcasts.

At the close of plaintiff's evidence, the trial judge granted defendants' motion for an involuntary dismissal. From this judgment, plaintiff appeals.

*DeLaney, Millette, DeArmon & McKnight, by Samuel M. Millette, for plaintiff appellant.*

*Harkey, Faggart, Coira & Fletcher, by Francis M. Fletcher, Jr., and Philip D. Lambeth; Gerald Rubin, for defendant appellees.*

VAUGHN, Judge.

Plaintiff presents only one argument on appeal. It contends that the court erred in granting defendants' motion for dismissal

Matthews, Cremins, McLean, Inc. v. Nichter

of the action for libel because plaintiff had presented sufficient evidence to submit the question of defamation to the jury.

Libel has been defined as a malicious publication, in writing, which tends to impeach the reputation of someone and expose him to public contempt. 50 Am. Jur. 2d *Libel and Slander* § 3 (1970).

> " 'Libels may be divided into three classes: (1) Publications which are obviously defamatory and which are termed libels *per se*; (2) publications which are susceptible of two reasonable interpretations, one of which is defamatory and the other is not, and (3) publications which are not obviously defamatory, but which become so when considered in connection with innuendo, colloquium and explanatory circumstances. This type of libel is termed libel *per quod.*' " *Robinson v. Insurance Co.*, 273 N.C. 391, 393-94, 159 S.E. 2d 896 (1968) (quoting *Flake v. News Co.*, 212 N.C. 780, 195 S.E. 55 (1938).

Libel *per se* is actionable without proof of actual damages because malice and injury are presumed. *Stewart v. Check Corp.*, 279 N.C. 278, 182 S.E. 2d 410 (1971); *Badame v. Lampke*, 242 N.C. 755, 89 S.E. 2d 466 (1955). Defamatory statements about a businessman imputing conduct derogatory to his reputation are actionable *per se* if they are uttered about him in his business relationship and affect him in his particular occupation. *Badame v. Lampke, supra.*

Plaintiff introduced into evidence three allegedly defamatory letters: one sent to West Virginia, one to South Dakota, and one with the addressee obliterated. Copies of the letters were sent to television advertising representatives in New York. "Unless otherwise provided by statute, libelous matter sent through the mails is generally actionable either at the place of posting or at the place of receipt by the addressee, even in another state. . . ." *Sizemore v. Maroney*, 263 N.C. 14, 21, 138 S.E. 2d 803 (1964). The law of the state in which the tort occurs governs the case. *Kornegay v. Oxendine*, 21 N.C. App. 501, 204 S.E. 2d 885 (1974). In New York, the general rule is that

> " [a] writing is defamatory — that is, actionable without allegation or proof of special damage — if it tends . . . to induce an evil or unsavory opinion of [a person] in the minds of

a substantial number in the community, even though it may impute no moral turpitude to him . . . . And to that listing of the defamatory should be added a writing which tends to disparage a person in the way of his office, profession or trade.' " (Citations omitted.) *Book v. Severino*, 380 N.Y.S. 2d 692, 693-94 (1976). *See Four Star Stage Lighting, Inc. v. Merrick*, 392 N.Y.S. 2d 297 (1977).

South Dakota follows this same rule. *Williams v. Hobbs*, 81 S.D. 79, 131 N.W. 2d 85 (1964). In West Virginia, a corporation may sue for libel when a publication defames its business reputation. *Coal Land Development Co. v. Chidester*, 86 W. Va. 561, 103 S.E. 923 (1920). Thus, plaintiff would be entitled to sue in any of these jurisdictions for the libelous actions of defendants.

Taking the plaintiff's evidence in the light most favorable to plaintiff, we find that defendant Nichter admittedly sent the allegedly libelous letters to at least two television stations. One of plaintiff's employees testified that he received a copy of the letters from each station. This testimony indicates that the letters were read by third parties and, therefore, fulfills the publication element of the cause of action for libel. *Taylor v. Bakery*, 234 N.C. 660, 68 S.E. 2d 313 (1951); 50 Am. Jur. 2d *Libel and Slander* § 155 (1970). That these third parties may not be business relations of plaintiff's is inconsequential because the only requirement is that plaintiff's business reputation be defamed. We further find that the letters themselves are libelous *per se* because they tend to injure plaintiff's reputation in that they assert that plaintiff breaches its contracts and fails to pay its bills. These statements clearly tend to disparage plaintiff's integrity in its business dealings.

We, therefore, reverse the order of the trial court dismissing plaintiff's action for libel.

Reversed.

Judges HEDRICK and ARNOLD concur.