EARL ELLIS AND ELLIS BROKERAGE COMPANY, INC. v. NORTHERN STAR COMPANY AND THOMAS W. KENNEY

No. 192PA89

(Filed 7 February 1990)

1. **Libel and Slander § 5.2 (NCI3d)— letter impeaching trade —libelous per se**

   A letter sent by defendant potato processor's vice president to customers of plaintiff food brokerage company which referred to a price list for Northern Star potato products distributed by plaintiff and stated that "we at Northern Star did not authorize such a price list" impeached plaintiff in its trade as a food broker and was libelous per se.

   **Am Jur 2d, Libel and Slander §§ 102, 104.**

2. **Libel and Slander § 15 (NCI3d)— statement by plaintiff's customer—competency to show injury to business**

   Testimony by plaintiff food broker's employee that, after having received a libelous letter from defendant potato processor stating that it did not authorize a price list distributed by plaintiff, a customer stated that "he was going to look for other sources to get his potatoes because he didn't know whether he could trust [plaintiff or defendant] either one" was properly admitted to show the customer's state of mind in relying on defendants' misrepresentations in the letter and was sufficient to support the jury's finding that defendants' letter proximately caused injury to plaintiffs' business.

   **Am Jur 2d, Libel and Slander §§ 360, 472.**

3. **Unfair Competition § 1 (NCI3d)— libel per se impeaching business activity—unfair trade practice**

   A libel per se of a type impeaching a party in its business activities is an unfair or deceptive act in or affecting commerce

ELLIS v. NORTHERN STAR CO.

[326 N.C. 219 (1990)]

in violation of N.C.G.S. § 75-1.1, which will justify an award of damages under N.C.G.S. § 75-16 for injuries proximately caused.

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices §§ 772, 774.**

4. **Unfair Competition § 1 (NCI3d)— unfair trade practice— question of law**

Whether an act found by the jury to have occurred is an unfair or deceptive practice which violates N.C.G.S. § 75-1.1 is a question of law for the courts.

**Am Jur 2d, Libel and Slander §§ 360, 484.**

5: **Unfair Competition § 1 (NCI3d)— unfair trade practice— determination by appellate court**

It does not invade the province of the jury for the Supreme Court to determine as a matter of law on appeal that acts expressly found by the jury to have occurred and to have proximately caused damages are unfair or deceptive acts in or affecting commerce under N.C.G.S. § 75-1.1.

**Am Jur 2d, Libel and Slander §§ 360, 484.**

6. **Unfair Competition § 1 (NCI3d)— letter impeaching trade— jury finding of libel and damages—unfair trade practice as matter of law**

The jury's findings that defendants libeled plaintiff food brokerage company by a letter impeaching it in its trade, thereby causing it actual injury and damages, required entry of judgment for plaintiff as a matter of law on its unfair and deceptive trade practice claim.

**Am Jur 2d, Libel and Slander §§ 360, 484.**

7. **Libel and Slander § 18 (NCI3d); Unfair Competition § 1 (NCI3d)— libel and unfair trade practice—punitive or treble damages**

Where libel and unfair trade practice claims arose from a letter sent by defendants, plaintiffs were not entitled to both punitive damages for the libel and treble damages under N.C.G.S. § 75-16 but could elect whether to recover punitive or treble damages.

**ELLIS v. NORTHERN STAR CO.**

[326 N.C. 219 (1990)]

**Am Jur 2d, Monopolies, Restraints of Trade, and Unfair Trade Practices § 711.**

Justice MEYER dissenting.

Justice WHICHARD joins in this dissenting opinion.

ON appeal from the judgment of *Brewer, J.*, entered in Superior Court, WAKE County, on 4 November 1988. Pursuant to N.C.G.S. § 7A-31(a) and Rule 15(e)(2) of the North Carolina Rules of Appellate Procedure, discretionary review prior to a determination by the Court of Appeals was allowed by the Supreme Court *ex mero motu* on 16 May 1989. Heard in the Supreme Court on 13 September 1989.

*Graham & James, by Mark Anderson Finkelstein, for the plaintiffs.*

*Morris, Bell & Morris, by William C. Morris, Jr., for the defendants.*

MITCHELL, Justice.

The questions presented on appeal include (1) whether a letter sent by the defendants to some of the plaintiffs' business contacts is libelous *per se*, and (2) whether libel *per se* of a plaintiff relating to the conduct of its business constitutes an unfair or deceptive act affecting commerce in violation of N.C.G.S. § 75-1.1. We conclude that the letter in question was properly found to be libelous *per se*. We further conclude that libel *per se* of a plaintiff as to the conduct of its business does violate N.C.G.S. § 75-1.1 and, when the libel proximately causes injury to the business, gives rise to a cause of action under N.C.G.S. § 75-16.

At trial, evidence tended to show that the plaintiff Ellis Brokerage Company, Inc. is a food broker. The company's function as a food broker is to convince large-quantity food buyers, such as hospitals and school systems, to place orders with the company's clients who are in the business of selling foods. The company's sole full-time employee is the individual plaintiff Earl Ellis. The defendant Northern Star Company is a Minnesota-based potato processor, and the defendant Thomas Kenney is Northern Star's senior vice-president for sales. Ellis Brokerage Company became a broker for Northern Star in 1981, and over the years built Northern

ELLIS v. NORTHERN STAR CO.

[326 N.C. 219 (1990)]

Star's sales in eastern North Carolina from no sales at all to approximately $640,000 annually.

On 20 June 1986, Ellis received Northern Star potato pricing information from Kenney over the telephone. On 23 June 1986, Ellis sent price lists based on this information to several potential buyers.

On 29 August 1986, Northern Star terminated its brokerage contract with Ellis Brokerage Company. On 5 September 1986, Kenney wrote the following letter for Northern Star to several of the buyers who had received the 23 June price list from Ellis:

> Dear Sir;
>
> We have recently received copies of a price list sent to you from Ellis Brokerage Company regarding pricing on Northern Star potato products. These prices were noted for *bids only*, delivered by Northern Star.
>
> We at Northern Star Company did not authorize such a price list and therefore cannot honor the prices as quoted on June 23, 1986.
>
> . . . .
>
> Sincerely,
>
> Thomas W. Kenney
> Senior Vice-President Sales

The plaintiffs then brought this action contending the letter is libelous *per se* and an unfair or deceptive act affecting commerce under N.C.G.S. § 75-1.1. The plaintiffs' amended complaint also alleged breach of a covenant of good faith, breach of contract through unreasonable termination, tortious interference with business relations, and unjust enrichment or restitution. The defendants counterclaimed for breach of fiduciary duty and breach of contract. The breach of contract claim and counterclaim were settled prior to trial. At the close of the plaintiffs' evidence, the trial court granted the defendants' motions for directed verdicts on all but the libel claims. The jury found that the defendants had maliciously libeled the plaintiff Ellis Brokerage Company, and awarded compensatory and punitive damages. The jury also found, however, that the defendants had not libeled the individual plaintiff Earl Ellis.

We note at the outset that, since the jury expressly found that the defendants acted with actual malice, this case does not

**ELLIS v. NORTHERN STAR CO.**

[326 N.C. 219 (1990)]

present the issue of whether damages may be presumed in libel *per se* actions absent a finding of malice, as this Court has held in previous cases. *See, e.g., Flake v. News Co.*, 212 N.C. 780, 785, 195 S.E. 55, 59 (1938), *quoted in Renwick v. News and Observer & Renwick v. Greensboro News*, 310 N.C. 312, 316, 312 S.E.2d 405, 408, *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984). Certain cases decided by the Supreme Court of the United States give rise to a question as to whether North Carolina can continue the common law presumption of damages in libel *per se* actions absent express findings of malice. *See, e.g., Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 86 L. Ed. 2d 593 (1985); *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 41 L. Ed. 2d 789 (1974); *Walters v. The Sanford Herald, Inc.*, 31 N.C. App. 233, 228 S.E.2d 766 (1976); Halpern, *Of Libel, Language, and Law: New York Times v. Sullivan at Twenty-Five*, 68 *N.C.L. Rev.* 273 (1990); Christie, *Underlying Contradictions in the Supreme Court's Classification of Defamation*, 1981 *Duke L.J.* 811.

I.

We first address the defendants' contentions that the trial court erred in denying their motions for directed verdict and judgment notwithstanding the verdict as to the plaintiffs' libel and punitive damages claims. Since the jury found the defendants had not libeled Earl Ellis, we consider these contentions only as they relate to the libel claim by Ellis Brokerage Company.

North Carolina has long recognized three categories of libel:

(1) Publications which are obviously defamatory and which are termed libels per se; (2) publications which are susceptible of two reasonable interpretations, one of which is defamatory and the other is not; and (3) publications which are not obviously defamatory, but which become so when considered in connection with innuendo, colloquium and explanatory circumstances. This type of libel is termed libel per quod.

*Flake v. News Co.*, 212 N.C. 780, 785, 195 S.E. 55, 59 (1938); *see Renwick v. News and Observer & Renwick v. Greensboro News*, 310 N.C. at 316, 312 S.E.2d at 408 (quoting *Arnold v. Sharpe*, 296 N.C. 533, 537, 251 S.E.2d 452, 455 (1979)).

Further,

ELLIS v. NORTHERN STAR CO.

[326 N.C. 219 (1990)]

a publication is libelous *per se*, or actionable *per se*, if, when considered alone without innuendo: (1) It charges that a person has committed an infamous crime; (2) it charges a person with having an infectious disease; (3) it tends to subject one to ridicule, contempt, or disgrace, or (4) it tends to impeach one in his trade or profession.

*Flake v. News Co.*, 212 N.C. at 787, 195 S.E.2d at 60-61 (citing cases), *cited in Renwick v. News and Observer & Renwick v. Greensboro News*, 310 N.C. at 317, 312 S.E.2d at 408-09.

[1] The plaintiffs contend that the defendants' letter of 5 September 1986 is libelous *per se*. The defendants, on the other hand, argue that the letter is not defamatory at all or, alternatively, it is susceptible of both defamatory and nondefamatory interpretations. We conclude that the letter is libelous *per se*. The language "[w]e at Northern Star did not authorize such a price list," taken in the context of the entire letter, can only be read to mean that Ellis Brokerage Company, acting in its capacity as broker for Northern Star, did an unauthorized act. Whether that act was publishing certain unauthorized prices within a price list or publishing the entire price list itself without authorization is of no import; either reading is defamatory and impeaches Ellis Brokerage in its trade as a food broker.

Whether a publication is one of the type that properly may be deemed libelous *per se* is a question of law to be decided initially by the trial court. *See Flake v. News Co.*, 212 N.C. at 786, 195 S.E.2d at 409, *quoted in Renwick v. News and Observer & Renwick v. Greensboro News*, 310 N.C. at 317-18, 312 S.E.2d at 409; *Sasser v. Rouse*, 35 N.C. 142, 143 (1851). Here, the trial court properly treated the defendants' letter as a publication of that type and allowed the libel *per se* claim of Ellis Brokerage Company to be decided by the jury.

[2] At trial, Earl Ellis testified to a discussion he had with Bill Flemming of Henderson Fruit & Produce, one of Ellis Brokerage Company's customers. Ellis testified that Flemming stated he had received one of Northern Star's letters. Flemming told Ellis, after receiving the letter, that "he was going to look for other sources to get his potatoes because he didn't know whether he could trust me or Northern Star either one." Although the defendants objected to Ellis' testimony concerning Flemming's statement, the trial court properly admitted the testimony as showing Flemming's state of

mind, since it was directly pertinent to the question of Flemming's reliance upon the defendants' misrepresentations. *See Pearce v. American Defender Life Ins. Co.*, 316 N.C. 461, 472, 343 S.E.2d 174, 181 (1986); N.C.R. Evid. 801(c), 803(3); 1 Brandis on North Carolina Evidence 3d §§ 141, 161 (1988 & Supp. 1989). While Flemming's statement as described by Ellis could be taken as an indication that Flemming did not think he could trust Earl Ellis personally, Earl Ellis and Ellis Brokerage Company were, to the extent pertinent to this issue, one and the same; Earl Ellis was the sole employee of Ellis Brokerage Company. The testimony of Earl Ellis concerning Flemming's statement was sufficient to support the jury's finding that the defendants' letter proximately caused injury to Ellis Brokerage Company's business.

Based on the evidence and upon proper instructions, the jury found that the defendants had libeled Ellis Brokerage Company and that the company was entitled to compensatory and punitive damages. The defendants' assignments of error relating to the verdict and judgment against them for their having libeled Ellis Brokerage Company are without merit and are overruled.

II.

[3] The second issue before the Court is whether libel *per se* in a business setting is an unfair or deceptive act in or affecting commerce in violation of N.C.G.S. § 75-1.1. With certain qualifications discussed below, we answer this question in the affirmative. Again, since the jury found no libel of the plaintiff Earl Ellis by the defendants, we consider and answer this question only with regard to the plaintiff Ellis Brokerage Company.

This Court has previously examined the substance and purpose of N.C.G.S. § 75-1.1 prohibiting unfair or deceptive acts in or affecting commerce. *See, e.g., Marshall v. Miller*, 302 N.C. 539, 276 S.E.2d 397 (1981). We have concluded, for example, that both false advertising and fraud violate that statute. *Winston Realty Co. v. G.H.G., Inc.*, 314 N.C. 90, 331 S.E.2d 677 (1985) (false advertising); *Hardy v. Toler*, 288 N.C. 303, 218 S.E.2d 342 (1975) (fraud). In limitation, we have held that certain transactions already subject to pervasive and intricate statutory regulation, such as securities transactions, were not intended by the legislature to be included within the scope of the statute. *Skinner v. E.F. Hutton & Co.*, 314 N.C. 267, 333 S.E.2d 236 (1985). In the present case, however, we conclude that no such limitation applies. Instead, like fraud and false adver-

tising, a libel *per se* of a type impeaching a party in its business activities is an unfair or deceptive act in or affecting commerce in violation of N.C.G.S. § 75-1.1, which will justify an award of damages under N.C.G.S. § 75-16 for injuries proximately caused. *See Talbert v. Mauney*, 80 N.C. App. 477, 343 S.E.2d 5 (1986). To recover, however, a plaintiff must have "suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." *Pearce v. American Defender Life Ins. Co.*, 316 N.C. at 471, 343 S.E.2d at 180. The trial court erred in granting the defendants' motion for directed verdicts in their favor on this claim.

## III.

**[4,5]** Given the peculiar posture in which this case comes before us on appeal, we next find it necessary to consider whether the jury's findings that the defendants libeled Ellis Brokerage Company by impeaching it in its trade, thereby proximately causing it actual injury and damages, require, as a matter of law, entry of judgment for Ellis Brokerage Company on its unfair or deceptive acts claim. Whether an act found by the jury to have occurred is an unfair or deceptive practice which violates N.C.G.S. § 75-1.1 is a question of law for the court. *Hardy v. Toler*, 288 N.C. at 308-09, 218 S.E.2d at 345-46. "Ordinarily it would be for the jury to determine the facts, and based on the jury's finding, the court would then determine as a matter of law whether the defendant engaged in unfair or deceptive acts or practices in the conduct of trade or commerce." *Id.* at 310, 218 S.E.2d at 346-47. Therefore, it does not invade the province of the jury for this Court to determine as a matter of law on appeal that acts expressly found by the jury to have occurred and to have proximately caused damages are unfair or deceptive acts in or affecting commerce under N.C.G.S. § 75-1.1.

**[6]** Since the trial court erroneously directed a verdict against Ellis Brokerage Company on its unfair or deceptive practices claim, the jury was not instructed on the requirement of proximate causation necessary to support an award of damages for that claim. However, the jury was instructed that in order to award more than nominal damages for the defendants' libel of Ellis Brokerage Company, the jury must find "actual damages . . . to [the] business reputation of the Plaintiff caused by the libel." As Ellis Brokerage Company's libel and unfair trade claims both were based on exactly the same proximate results of exactly the same act of the defend-

ants, we conclude that the jury was sufficiently instructed on, and by its special verdict did find, damages to Ellis Brokerage Company proximately caused by the defendants' letter. We conclude as a matter of law, upon the facts found by the jury after proper instructions in this case, that the defendants' act did violate N.C.G.S. § 75-1.1. The order of the trial court directing a verdict against Ellis Brokerage Company on its unfair or deceptive practices claim must therefore be reversed and this case, given the peculiar posture in which it has come before us, is remanded for entry of judgment for the plaintiff Ellis Brokerage Company on that claim.

For reasons similar to those we have just discussed, however, the individual plaintiff Earl Ellis is entitled to no relief as a result of the trial court's error in directing a verdict against him on his unfair or deceptive practices claim. After proper instructions by the trial court, the jury found as a fact that the defendants' act of mailing the letter had not libeled Earl Ellis individually by impeaching him in his trade. As the plaintiff Earl Ellis alleged no other act of the defendants in support of his unfair or deceptive practices claim, the jury's findings against him in this regard on the libel claim necessarily were findings rejecting the facts alleged by him in his unfair or deceptive practices claim. Therefore, the plaintiff Earl Ellis is entitled to no relief on appeal.

IV.

[7] There remains a question as to the proper damages to be awarded to Ellis Brokerage Company. The company contends that it should be entitled to both punitive damages for the libel and the treble damages automatically assessed under N.C.G.S. § 75-16. We disagree. The libel and unfair trade claims both arose from the defendants' letter. Plaintiffs may in proper cases elect to recover either punitive damages under a common law claim or treble damages under N.C.G.S. § 75-16, but they may not recover both. *See Bicycle Transit Authority v. Bell*, 314 N.C. 219, 230, 333 S.E.2d 299, 306 (1985); *Mapp v. Toyota World, Inc.*, 81 N.C. App. 421, 426-27, 344 S.E.2d 297, 301, *disc. rev. denied*, 318 N.C. 283, 347 S.E.2d 464 (1986); *Marshall v. Miller*, 47 N.C. App. 530, 542, 268 S.E.2d 97, 103 (1980), *modified and aff'd*, 302 N.C. 539, 276 S.E.2d 397 (1981). The jury awarded Ellis Brokerage Company $32,500 in actual damages and $12,500 in punitive damages for the libel. Under N.C.G.S. § 75-16, the $32,500 in actual damages would be trebled, for a sum of $97,500. On remand of this case, the trial court must

ELLIS v. NORTHERN STAR CO.

[326 N.C. 219 (1990)]

allow Ellis Brokerage Company to elect its remedy: either a total of $45,000 for the combined libel award; or a total of $97,500 under N.C.G.S. § 75-16.

Affirmed in part; reversed in part; and remanded for further proceedings not inconsistent with this decision.

Justice MEYER dissenting.

I respectfully dissent from the majority's holding that the letter sent by defendant company to several of plaintiffs' business associates constitutes libel *per se* because it contains the assertion, "[w]e at Northern Star Company did not authorize such a price list." I do not believe that the phrase in question, when given its ordinary, everyday meaning, can only be interpreted as defamatory. Rather, the most that can be said is that the words can fairly and reasonably be interpreted in two ways, one of which is defamatory and the other of which is not.

In order to find a publication to be libelous *per se*, a court must construe the writing alone, without innuendo, colloquium or explanatory circumstances and find that the publication (1) charges that a person has committed an infamous crime; (2) charges a person with having an infectious disease; (3) tends to impeach a person in that person's trade or profession; or (4) otherwise tends to subject one to ridicule, contempt or disgrace. *Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 312 S.E.2d 405, *reh'g denied*, 310 N.C. 749, 315 S.E.2d 704, *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984); *Flake v. News Co.*, 212 N.C. 780, 195 S.E. 55 (1938). "[D]efamatory words to be libelous *per se* must be susceptible of *but one meaning* and of such nature that the court can presume as a matter of law that they tend to disgrace and degrade the party or hold him up to public hatred, contempt or ridicule, or cause him to be shunned and avoided." *Flake*, 212 N.C. at 786, 195 S.E. at 60 (emphasis added). I cannot conclude that this letter is susceptible of but one interpretation, which is defamatory when considered alone without innuendo or explanatory circumstances. The worst that can be said of the letter is that it is reasonably susceptible of a defamatory meaning. *See Renwick*, 310 N.C. 312, 312 S.E.2d 405. I find that the letter is, at the very least, equally susceptible of a nondefamatory interpretation. It therefore cannot be libelous *per se*.

ELLIS v. NORTHERN STAR CO.

[326 N.C. 219 (1990)]

The principle of common sense requires that courts shall understand [publications] as other people would. The question always is how would ordinary men naturally understand the publication. The fact that supersensitive persons with morbid imaginations may be able, by reading between the lines of [a publication], to discover some defamatory meaning therein is not sufficient to make it libelous.

*Flake*, 212 N.C. at 786, 195 S.E. at 60 (citations omitted).

The assertion, "[w]e at Northern Star Company did not authorize such a price list," when read by a typical recipient of this letter, could very reasonably be interpreted to mean that there was a simple breakdown in communications or an inadvertent mistake in the price list through the fault of either or both parties. I concede that if such a statement imputes a lack of qualities which the public, in this case the buyers of defendant's product, has a right to expect of a plaintiff in its calling, it is properly labeled libel *per se*. Such would be the case if defendant indicated that plaintiffs habitually published price lists without defendant's authorization, or repeatedly made mistakes in the transmission of those prices. However, the fact that defendant informed its customers that on one occasion its broker sent a price list that defendant did not authorize does not rise to the level of accusing that broker of incompetence or untrustworthiness, nor would a typical buyer automatically reach that conclusion.

Our case law defines the applicable category of libel *per se* as those publications which tend to "impeach a person in that person's trade or profession." *Renwick*, 310 N.C. at 317, 312 S.E.2d at 409. Although this category could be interpreted as encompassing a wide spectrum of perceived wrongs, my research of North Carolina case law reveals that our courts have tended to recognize more blatantly derogatory statements than the one at issue here as defamatory *per se* in the business context. The words must contain an imputation which is *necessarily* harmful in its effect on plaintiffs' business. *See, e.g., Badame v. Lampke,* 242 N.C. 755, 89 S.E.2d 466 (1955) (where plaintiff alleged that defendant, a business competitor, spoke words over the telephone to a customer which imputed to plaintiff the reputation of engaging in "shady deals," the words were slander *per se*); *Lay v. Publishing Co.*, 209 N.C. 134, 183 S.E. 416 (1936) (it was libel *per se* for newspaper to publish that plaintiff was the leader of a strike and had been arrested

ELLIS v. NORTHERN STAR CO.

[326 N.C. 219 (1990)]

for trespassing on mill property); *Broadway v. Cope*, 208 N.C. 85, 179 S.E. 452 (1935) (statement by butcher that his competitor had slaughtered a mad-dog-bitten cow was defamatory *per se*); *Pentuff v. Park*, 194 N.C. 146, 138 S.E. 616 (1927) (newspaper article labeling minister an "immigrant ignoramus" and calling him discourteous to those who disagreed with him on the subject of evolution affected his calling and was libelous *per se*); *U v. Duke University*, 91 N.C. App. 171, 371 S.E.2d 701, *disc. rev. denied*, 323 N.C. 629, 374 S.E.2d 590 (1988) (statements by defendant to plaintiff's colleague that plaintiff was a liar, deceitful, absolutely useless, and a fraud impeached plaintiff in his profession and constituted slander *per se*); *Talbert v. Mauney*, 80 N.C. App. 477, 343 S.E.2d 5 (1986) (allegations that president of bank published statements that one of borrowers forged his letters of credit and that he was drug dealer constituted allegations of slander *per se*); *Morris v. Bruney*, 78 N.C. App. 668, 338 S.E.2d 561 (1986) (defendant's statements that plaintiff was immature, unintelligent, and unfit as mother were not slander actionable *per se* as statements made to affect plaintiff in her trade or business as nursery school worker); *Matthews, Cremins, McLean, Inc. v. Nichter*, 42 N.C. App. 184, 256 S.E.2d 261, *cert. denied*, 298 N.C. 569, 261 S.E.2d 123 (1979) (letters, which were sent to television stations and which asserted that advertising agency breached its contracts and failed to pay its bills, tended to injure agency's business reputation, making the letters libelous *per se*).

The trial court treated defendant's letter as libel *per se* and charged the jury that if it found that the letter was "understood by the third person in a defamatory way, that is, that the statement reasonably tended to impeach or injure the Plaintiff in his trade or profession," then it would be the jury's duty to answer the issue "yes." In my opinion, defendant's letter was clearly *not* defamatory *per se*, and the issue should *not* have been submitted to the jury.

Instructions on middle-tier libel, libel *per quod*, or both would have been appropriate in this case had they been properly alleged in plaintiffs' complaint. However, plaintiffs' complaint failed to bring the letter within the second class of libel, since it did not allege that the letter is susceptible of two interpretations, one defamatory, and that the defamatory meaning was intended and was so understood by those to whom the publication was made. *Renwick*, 310 N.C. at 316-17, 312 S.E.2d at 408; *Cathy's Boutique v. Winston-*

*Salem Joint Venture*, 72 N.C. App. 641, 325 S.E.2d 283 (1985). Further, the complaint failed to bring the letter within the libel *per quod* category because plaintiffs did not allege special damages. *Renwick*, 310 N.C. at 317, 312 S.E.2d at 408. While certain allegations of the complaint might be interpreted to allege special damages, the complaint refers to those allegations as supporting only a libel *per se*. If, as I have concluded, the writing does not constitute libel *per se*, defendant is entitled to remand of this case directing the entry of an order granting its motion for directed verdict on the libel issue.

Justice WHICHARD joins in this dissenting opinion.