**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 04-2146**

_____

SUN CHEMICALS TRADING CORPORATION, a/k/a Sum
Kimya Gida Sanayi Ve Tickaret A.S.; AHMET
CULLU,

                                    Plaintiffs - Appellants,


        versus


SGS CONTROL SERVICES, INCORPORATED,

                                    Defendant - Appellee,


        and


CBP RESOURCES, INCORPORATED; PASTERNAK, BAUM,
AND COMPANY, INCORPORATED,

                                    Defendants.

_____

Appeal from the United States District Court for the Middle
District of North Carolina, at Durham.  William L. Osteen, District
Judge.  (CA-01-425-1)

_____

Argued:  September 21, 2005        Decided:  December 13, 2005

_____

Before WILKINSON and WILLIAMS, Circuit Judges, and Robert J.
CONRAD, Jr., United States District Judge for the Western District
of North Carolina, sitting by designation.

_____

Affirmed by unpublished per curium opinion.

_____

**ARGUED:** Charles Elwood Soechting, Stephen Rolfe Walker, O'QUINN, LAMINACK & PIRTLE, Houston, Texas, for Appellants. James Robert Fox, BELL, DAVIS & PITT, P.A., Winston-Salem, North Carolina, for Appellee. **ON BRIEF:** Jennifer R. Tillison, Kevin Dubose, ALEXANDER, DUBOSE, JONES & TOWNSEND, L.L.P., Houston, Texas, for Appellants. Alexander P. Ryan, BELL, DAVIS & PITT, P.A., Winston-Salem, North Carolina, for Appellee.

------------

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIUM:

Mr. Ahmet Cullu ("Cullu") and Sun Chemicals Trading Corp. ("Sun") appeal the district court's order dismissing their claims against SGS Control Services ("SGS") for breach of contract, fraud, breach of express warranty, breach of the implied warranties of merchantability and fitness for a particular purpose, unfair and deceptive trade practices, and negligent infliction of emotional distress. For the below-stated reasons, we affirm the district court's Rule 12(b)(6) dismissal of the Plaintiffs' complaint against SGS.

I.

In February 1998, Sun, though its president and principal shareholder Cullu, contracted with CBP Resources, Inc. ("CBP") for the purchase of 3,500 metric tons of feed grade 'yellow grease.' Pasternak, Baum & Co., Inc. ("Pasternak") brokered the purchases between Sun and CPB. During contract negotiations, Cullu informed CBP and Pasternak that the yellow grease was to be exported to Turkey, and that Muslims in Turkey were prohibited under the *Sharia* from consuming pork and pork-derived products. To this end, the purchase order contracts specified that the yellow grease could not contain any lard.

CBP independently retained SGS to test the yellow grease for the presence of lard. SGS tested the yellow grease, and provided

3

thereafter its "No Lard" certification stating the yellow grease "tested negative for the presence of lard."  CBP issued notarized affidavits informing Sun that "the feed fat blend ... does not contain any lard, pork, or pig derived fat."

After the yellow grease was exported to Turkey, concerns arose that the grease was contaminated with lard.  Cullu requested that CBP and SGS provide additional assurances that the yellow grease did not contain any lard. SGS refused to provide additional assurances because no definitive test existed to conclusively determine the presence of lard.

Sun and Cullu (collectively, the "Plaintiffs") brought suit against CBP, SGS, and Pasternak.  The suit alleged claims of breach of contract, fraud, breach of express and implied warranties, unfair and deceptive trade practices, and infliction of emotional distress. The Plaintiffs alleged damages of $10 million, and made a demand for treble damages "and/or punitive damages for fraud." By consent order and pursuant to the terms of the purchase order contracts, Sun and Cullu, CBP, and Pasternak agreed to arbitrate their claims.  SGS declined to participate in the arbitration. Before arbitration, Pasternak settled with the Plaintiffs for $77,500.

A three-judge arbitration panel (the "panel") held eight days of evidentiary hearings, receiving live testimony, deposition transcripts, affidavits, and documentary evidence.  On July 9,

4

2003, the panel issued a final award in favor of the Plaintiffs. As to Sun, the panel found that it had suffered no direct damages because it was able to sell the yellow grease for a profit. However, the panel concluded Sun suffered incidental and consequential damages as a result of CBP's breach because "it was reasonably foreseeable that Sun would suffer the loss of its entire business in the sale of poultry feed in Turkey if its product were contaminated by pork." Sun was awarded $300,000 "for anticipated lost profits," which the panel trebled to $900,000 under North Carolina's Unfair and Deceptive Trade Practices Act. The panel also found Sun had failed to carry its burden of proof in its fraud claim, and therefore found in favor of CBP.

As to Cullu, the panel determined "the actions of CBP constitute[d] a negligent misrepresentation" that damaged Cullu, and it found that conduct to be "actionable under Section 552 of the Restatement (Second) of Torts." The negligent misrepresentation arose because "CBP provided inaccurate information for the guidance of Sun and Mr. Cullu[,]...[it] failed to exercise reasonable care[, and]...Sun and Mr. Cullu justifiably relied upon the information." As a result of CBP's "negligent conduct" the arbitrators awarded Cullu $150,000 for the loss in value of Sun. The panel further awarded Cullu $2,731 for past and future medical expenses that "were reasonably related to the temporary damage to Mr. Cullu's reputation and the loss of Sun, which were themselves proximately

5

caused by the negligent conduct of CBP." The panel also found that "CBP's negligent misrepresentation also damaged the reputation of Mr. Cullu," but that the damage was temporary, and thus awarded $1.00 for the "unquantifiable temporary damage." The panel trebled the amount awarded to Cullu, and then reduced the award by the $77,500 received in the Pasternak settlement, leaving a net award to Cullu of $380,696.

The panel also found that CBP would bear both the compensation and expenses of the arbitrators, totaling $57,439.28, and the administrative fees and expenses of the American Arbitration Association, totaling $37,500.

As to Cullu's remaining claims of fraud and negligent infliction of emotional distress, the arbitration panel found that Cullu had failed to carry his burden of proof, and therefore found in favor of CBP.

After the arbitration concluded, SGS moved to dismiss Sun and Cullu's complaint against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. SGS argued that North Carolina's "one-satisfaction" doctrine precluded any further recovery by Sun or Cullu, and that the doctrine of collateral estoppel precluded re-litigation of damages. The district court agreed with SGS. The court dismissed the Plaintiffs' claims against SGS, finding "[u]nder the detailed arbitration award [Sun and Cullu] have made

6

a recovery for all of the injuries they assert against SGS in this action."[1]

## II.

On appeal, Sun and Cullu contend that the district court erred when it found that Sun and Cullu already had recovered at arbitration for all of the injuries they asserted against SGS in this action.

We review *de novo* a decision of the lower court on a motion to dismiss pursuant to Rule 12(b)(6). Brooks v. City of Winston-Salem, N.C., 85 F.3d 178 (4th Cir. 1996). Dismissal under Rule 12(b)(6) is appropriate when, accepting as true the well-pleaded facts in the complaint and viewing them in the light most favorable to the plaintiffs, the court finds with certainty that a plaintiff would not be entitled to relief under any set of facts that could be proved in support of the claim. See id.

It is well-settled that North Carolina law precludes a plaintiff from recovering more than one-satisfaction for the same injury, caused by different parties. "Both reason and justice decree that there should be collected no double compensation, or even overcompensation, for any injury, however many sources of

---

[1]Because the district court dismissed the Plaintiffs' actions on 12(b)(6) grounds, it did not reach the merits of Defendant's collateral estoppel argument. Likewise, we need not and do not reach the collateral estoppel issue.

compensation there may be .... Any amount paid by anybody, whether they be joint tort-feasors or otherwise, for and on account of any injury or damage, should be held for a credit on the total recovery in any action for the same injury or damage." Holland v. Southern Public Utilities Co., Inc., 208 N.C. 289, 292, 180 S.E. 592, 593-94 (1935). See also Chemimetals Processing, Inc. v. Schrimsher, 140 N.C. App. 135, 138, 535 S.E.2d 594 (2000)(holding that it is well-settled that although a plaintiff is entitled to full recovery for its damages, it is not entitled to a double recovery for the same loss or injury); Chisholm v. UHP Projects, Inc., 205 F.3d 731, 738 (4th Cir. 2000)(holding the rule is an equitable doctrine that operates to reduce a plaintiff's recovery from the non-settling defendant to prevent the plaintiff from recovering twice from the same assessment of liability).

As did the district court, we too find the reasoning in Chemimetals persuasive. In Chemimetals, the plaintiff sued its corporate president for breach of contract, breach of fiduciary duty, and unfair and deceptive trade practices arising from the president's scheme to divert company assets to himself. After settling with the president, the corporation initiated a second action against its board of directors and accountants on the same factual allegations, alleging theories of negligence, including breach of duty of care and breach of fiduciary duty in failing to notice the former president's unlawful acts. Id. at 137. The North

8

Carolina Court of Appeals held that the plaintiff's second action was barred, even though the defendants committed separate acts of wrongdoing, because the defendants' actions concurrently caused the plaintiff to suffer the same injuries for which it already had been fully compensated through the settlement agreement:

> [The plaintiff] has suffered but one injury in this case--monetary loss due to the purported diversion of profits and labor from [the plaintiff] by [the plaintiff's president]. Under the facts as alleged by [the plaintiff], all actions in the course of events leading to financial demise of [the company] were concurrent. [The plaintiff's] monetary loss, which was the injury created by [the president's] scheme, is the same injury caused by the alleged failure of the board of directors and CPAs to notice [the president's] unlawful acts. That only one injury occurred is in no way altered by the fact that the board of directors and CPAs may have been guilty of separate wrongdoing.

Id. Thus, as the plaintiff had not demonstrated any remaining damages for which it had not been compensated, the court in Chemimetals found that the trial court properly entered summary judgment against the plaintiff.

Likewise, the Plaintiffs in the instant case have alleged nearly identical claims against CBP, Pasternek, and SGS, seeking recovery for losses arising from Sun's financial collapse. While CBP, SGS and Pasternak may have all committed separate acts of wrongdoing, the resulting injuries suffered by Sun and Cullu, are the same. Thus, we find the Plaintiffs recovered at arbitration all the damages to which they were entitled.

First, a review of the arbitration panel's decision shows that

9

the Plaintiffs were compensated "for all of their compensable injuries by way of the arbitration award." The panel determined that Sun suffered no direct damages, and found that it sustained only consequential and incidental damages. These damages were awarded to Sun in the form of lost future profits, and were trebled pursuant to North Carolina's Unfair and Deceptive Trade Practices Act. The panel also awarded damages to Cullu to compensate him for his personal losses associated with Sun's financial collapse, as well for injury to his reputation and certain medical expenses. These damages also were trebled. The panel reduced the total award to Cullu by the pre-arbitration settlement with Pasternek, and then awarded Cullu those fees associated with the costs of arbitration. Further, the panel held that the Plaintiffs had failed to carry their burden of proof for their claims of fraud and emotional distress, and found in favor of CBP on those claims. According to the panel, the award was made "in full settlement of all claims submitted to this Panel in this arbitration proceeding."

It is unpersuasive that the Plaintiffs sought between $9 and $85 million from the arbitration panel, but did not recover those sums. As the district court correctly pointed out "[f]requently, litigants do not receive the full damage verdict or judgment they seek. A 'disappointing' result does not entitle a litigant to seek damages for the same injuries from another defendant in the hopes of a better recovery." Sun Chemical Trading Corp. v. CBP Resources,

10

<u>Inc</u>., 2004 WL 1777582, at \*5 (M.D.N.C. July 29, 2004).

For these reasons, we find that the Plaintiffs have alleged no theory of compensatory damages against SGS that has not already been considered and/or awarded by the arbitration panel.[2] Thus, the Plaintiffs are not entitled to further compensation from SGS.

Second, we do not find persuasive the Plaintiffs' contention that, because North Carolina's one-satisfaction rule generally is inapposite to punitive damages, they ought to be able to pursue an action against SGS for punitive damages.

Punitive damages are generally disfavored by the law, and should be allowed only when they can properly promote the dual purposes of punishment and deterrence. <u>See</u> <u>Ratner</u> v. <u>Sioux Natural Gas Corp.</u>, 719 F.2d 801 (5th Cir. 1983). To this end, the North Carolina Supreme Court has held "a party may not recover punitive damages for tortious conduct and treble damages for a violation of Chapter 75 based on that same conduct." <u>United Laboratories, Inc.</u> v. <u>Kuykendall</u>, 335 N.C. 183, 191, 437 S.E.2d 374, 379 (1993) (citing <u>Ellis v. Northern Star</u>, 326 N.C. 219, 227-28, 388 S.E.2d 127, 132 (1990)).

In the instant case, the Plaintiffs seek punitive damages against SGS based on the same conduct and injuries for which the

---

[2]The district court has issued a thorough analysis detailing the nature of the arbitration award in CBP's subsequent action against SGS. <u>See</u> <u>CBP Resources, Inc.</u> v. <u>SGS Control Services, Inc.</u>, 2005 WL 1166730 (M.D.N.C. May 17, 2005).

arbitration panel separately awarded Sun and Cullu treble damages against CBP. The Plaintiffs, however, have cited no case that authorizes the trebling of damages against one defendant and punitive damages against a subsequent defendant, when both defendants may be liable for common damages arising from a single indivisible harm.

Thus, we find that allowing the Plaintiffs to recover treble damages from CBP, and punitive damages from SGS, for the same wrongful conduct and injuries, would contravene North Carolina's one-satisfaction rule, as well as the North Carolina Supreme Court's holding in <u>Kuykendall</u>.

As explicated above, under North Carolina law plaintiffs are not entitled to more than one satisfaction for the same injuries, "regardless of how many claims or bases of liability they may assert, or how many defendants they may pursue." <u>Sun Chemical</u>, 2004 WL 1777582, at *5. Thus, we find that by virtue of the arbitration award, the Plaintiffs have received a full and complete recovery for their damages, and therefore are prohibited from seeking additional recovery from SGS.

## III.

In conclusion, for the reasons stated in this opinion, we hold the district court did not err when it dismissed Sun's claims against SGS pursuant to Rule 12(b)(6).

12